[No. G045323. Fourth Dist., Div. Three. June 18, 2012.]

JEFF CROUCIER et al., Plaintiffs and Appellants, v.
ANTHONY G. CHAVOS et al., Defendants and Respondents.

## COUNSEL

Law Offices of Michelle D. Strickland and Michelle D. Strickland for Plaintiffs and Appellants.

Sedgwick, Gregory H. Halliday, Frederick B. Hayes and Chelsea N. Trotter for Defendants and Respondents.

## OPINION

**IKOLA, J.**—Plaintiffs (Jeff Croucier and David Moody) sued defendants (Anthony G. Chavos and Chavos & Rau, APC)[1] for alleged legal malpractice committed in a prior lawsuit. The trial court sustained Chavos's demurrer to the first amended complaint and dismissed the action against Chavos based on the applicable statute of limitations. (See Code Civ. Proc., § 340.6 (section 340.6).) We agree with the court's ruling and affirm the judgment of dismissal.

### FACTS

As is often the case in legal malpractice actions, the facts necessary to decide this appeal are convoluted. There are three pertinent lawsuits: (1) the underlying business litigation, in which Chavos successfully obtained a default judgment in favor of plaintiffs but failed to successfully enforce the judgment; (2) a fraudulent conveyance action, brought by current counsel for plaintiffs against certain parties that allegedly engaged in tortious conduct to stymie the enforcement of the default judgment obtained in the underlying business litigation; and (3) the instant action, in which plaintiffs allege Chavos committed legal malpractice and other torts in the underlying litigation, specifically with regard to the enforcement of the judgment obtained therein.

In conducting our de novo review of the court's order sustaining Chavos's demurrer, we "must 'give[] the complaint a reasonable interpretation, and treat[] the demurrer as admitting all material facts properly pleaded.' " (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957 [70 Cal.Rptr.3d 501].) "Where, as here, a demurrer is to an amended complaint,

---

[1] We will refer to defendants/respondents as "Chavos." Another defendant—Buckner, Alani, Khouri, Chavos & Mirkovich (Buckner Firm)—is not a party to this appeal. Chavos previously worked at the Buckner Firm before departing to start his own firm. The Buckner Firm was not dismissed pursuant to the judgment of dismissal that is the subject of this appeal. The case between plaintiffs and the Buckner Firm continued past the judgment of dismissal, in part because of a cross-complaint filed by the Buckner Firm against plaintiffs.

we may consider the factual allegations of prior complaints, which a plaintiff may not discard or avoid . . . ." (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 [100 Cal.Rptr.3d 875].) In addition to the pleadings in the instant action, the trial court also properly took judicial notice of pleadings from the other actions at issue in this case. (See Evid. Code, § 452, subd. (d); Code Civ. Proc., § 430.30, subd. (a) ["When any ground for objection to a complaint . . . appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading."].) Thus, for purposes of setting forth the facts in this case, we rely on the initial complaint and first amended complaint (as sources of facts that must be assumed true for purposes of this appeal), as well as judicially noticed documents from other actions (to establish the existence of these documents and the statements therein, not the truth of any factual statements made in these documents).

*Underlying Business Litigation*

On October 28, 2005, plaintiffs (represented by Chavos) filed a complaint for breach of contract and fraud against Sun Limousine Manufacturers, Robert Paul Curtis, Steve Curtis, and Mark Kane (collectively, Sun Limousine). This action alleged (1) Sun Limousine was in the business of selling custom limousines; (2) plaintiffs Croucier and Moody each negotiated separate contracts with Sun Limousine to purchase custom limousines; (3) Croucier and Moody each separately paid money consideration to Sun Limousine; (4) Sun Limousine did not deliver the limousines owed to Croucier and Moody; and (5) throughout the relevant time period, Sun Limousine made various false representations to Croucier and Moody.

"On or about April 26, 2006, Plaintiffs obtained a joint default judgment on the causes of action set forth in the complaint, in the sum of $1,132,148.10, which included an award of punitive damages for the fraud alleged in the complaint." "On or about July 2, 2006, the court signed an Affidavit of Identity and Order naming Xtreme Coach International Corporation as a judgment debtor in the case." "On or about August 15, 2006, Plaintiffs, through counsel CHAVOS, obtained a Writ of Possession, levied and seized at least one vehicle, registered in the name of Peter Goring, though Goring was not a judgment debtor in the case litigated by CHAVOS. Xtreme Coach . . . did not own the vehicle levied, though the vehicle was on its premises. This levy cost the Plaintiffs approximately $7,000.00." The court denied plaintiffs' motion to quash a third party claim made by Goring with reference to the ownership of the vehicle.

Chavos left the Buckner Firm in December 2006 and established a new firm, Chavos & Rau. Chavos "took the file of Plaintiffs, however, according

to court records, no substitution of attorney was ever filed" until June 5, 2008, when substitution of attorney forms were filed indicating plaintiffs had hired their current counsel, Michelle D. Strickland.

*Fraudulent Conveyance Action*

On June 12, 2008, plaintiffs Croucier and Moody (through Attorney Strickland) filed a complaint against the individual defendants from the underlying business litigation, as well as Peter Goring, Cheryl Goring, and Coach International Corporation (Xtreme Coach). Among other causes of action, plaintiffs asserted a fraudulent conveyance occurred with regard to Sun Limousine and its assets. Plaintiffs put forth the following factual allegations to support this cause of action: (1) the Gorings operated Xtreme Coach at the same site Sun Limousine had occupied; (2) the individual defendants from the underlying business litigation transferred Sun Limousine to Peter and Cheryl Goring "for little to no value"; (3) the Gorings continue to operate Xtreme Coach "for a profit, with the assets and capital acquired from the acquisition of" Sun Limousine; and (4) Xtreme Coach utilized the "same employees, equipment, [and] vendors" as Sun Limousine.

Plaintiffs suffered damages as a result of the fraudulent conveyance, "including attorney's fees, loss of credit, interest on borrowed money, the value of Plaintiffs' time in prosecuting this action, travel, and other incidental expenses . . . ."

Simultaneously with the complaint, plaintiffs filed ex parte applications for a writ of attachment and injunctive relief with regard to the assets of Xtreme Coach and the Gorings. Croucier stated under oath that plaintiffs became aware Sun Limousine had been sold to Peter Goring in September 2006.

*Malpractice Action*

On August 13, 2009, plaintiffs Croucier and Moody (represented by Strickland) filed the instant action against Chavos, Chavos & Rau, and the Buckner Firm. Both the initial complaint and the first amended complaint include multiple causes of action (i.e., professional negligence, breach of fiduciary duty, and fraud), but the factual allegations all pertain to the representation of plaintiffs in the underlying business litigation.

Plaintiffs alleged in their initial complaint that neither Chavos nor the Buckner Firm conducted adequate postjudgment discovery "to determine the status of Xtreme Coach . . . , its relations to Peter Goring, how and why it was conducting business in the very location of Sun Manufacturers, the Defendant in the underlying case, and the fact that Xtreme Coach was

conducting the exact same business . . . using the same employee manpower, the same tools and using the owners of [Sun Limousines] as their business management . . . ." "Plaintiffs obtained new counsel in June 2008, and she immediately began the collection process [in the underlying business litigation], which led to the Judgment debtor examinations which uncovered much of the information upon which this complaint is based." Debtor examinations conducted from August 2008 through December 2008 developed an evidentiary record supporting the allegations in the fraudulent conveyance action, as well as possible alter ego allegations against the Gorings.

The court granted a motion for judgment on the pleadings in September 2010, with leave to amend, based on a statute of limitations defense.

Plaintiffs' first amended complaint omitted much of the specific factual detail included in the initial complaint. Instead, plaintiffs more generally alleged that defendants were negligent in their representation of plaintiffs, by failing to "diligently, timely and properly identify any and all persons and entities who competent lawyers similarly situated would have joined in underlying case as indispensable parties . . . ; and seek and obtain equitable and legal remedies for declaratory relief, specific performance of existing contracts, constructive trusts and resulting trusts; and sought and obtained timely marshaling and tracing of all potential underlying . . . assets; and sought and obtained rescission and/or reformation of relevant purchase and sale arrangements concerning their assets; and secured title to all of their purloined assets; and timely and properly avoided transfers thereof to any alleged bona fide purchasers for value, setting aside any and all transfers to 'straws' and agents; and timely prosecuted any and all tort[] claims, and performed necessary adversary proceedings in Bankruptcy Courts to set aside any attempts by underlying defendants or their agents to declare plaintiffs as discharged creditors; and secured any and all economic damages and penalties as lawyers of ordinary skill similarly situated would have accomplished in their stead, WHICH, AS OF JUNE 5, 2008, WERE NO LONGER AVAILABLE TO PLAINTIFFS."

The court sustained a demurrer to the first amended complaint without leave to amend. The court then entered a judgment of dismissal as to Chavos.

## DISCUSSION

We are presented with a single issue: Did the trial court properly apply section 340.6 in sustaining Chavos's demurrer to the first amended complaint?[2] Although the application of section 340.6 often turns on the resolution of factual disputes, courts should sustain demurrers based on section 340.6 in appropriate circumstances. (See, e.g., *Rose v. Hudson* (2007) 153 Cal.App.4th 641, 646–647 [63 Cal.Rptr.3d 248] [affirming dismissal]; *Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 974 [83 Cal.Rptr.2d 119] [affirming dismissal].)

*"An action against an attorney for a wrongful act or omission*, other than for actual fraud, arising in the performance of professional services *shall be commenced within one year after the plaintiff discovers*, or through the use of reasonable diligence should have discovered, *the facts constituting the wrongful act or omission*, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that *the period shall be tolled during the time that* any of the following exist: [¶] (1) *The plaintiff has not sustained actual injury*. [¶] (2) *The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."* (Code Civ. Proc., § 340.6, subd. (a), italics added.)

 "Thus, the limitations period is one year from actual or imputed discovery, or four years (whichever is sooner), unless tolling applies." (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508 [66 Cal.Rptr.3d 52, 167 P.3d 666].) Although the language of the statute is ambiguous on the point, "[t]he tolling provisions of section 340.6 apply to both the one-year

---

[2] Plaintiffs have not argued in their briefs that reversal is justified on another ground. For instance, notwithstanding the inclusion of a "fraud" cause of action in the first amended complaint, plaintiffs do not contend their first amended complaint states a valid cause of action in "actual fraud," which is explicitly excluded from the scope of section 340.6. Nor do plaintiffs identify any additional facts they would plead were they given an opportunity to amend their operative complaint. (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166 [104 Cal.Rptr.3d 319] [to successfully argue on appeal that the trial court abused its discretion by not granting leave to amend, plaintiff has burden to enumerate new facts that would be pleaded in an amended complaint].)

The focus of plaintiffs' briefs seems to be the initial complaint (and the court's grant of a motion for judgment on the pleadings on the initial complaint). Indeed, plaintiffs included only the initial complaint in the clerk's transcript. Chavos successfully moved to augment the record with copies of the first amended complaint and the demurrer papers that were not included in the clerk's transcript pursuant to plaintiffs' designation. As noted previously, the initial complaint is relevant to our review because plaintiffs may not disavow the factual allegations made therein. But we " 'will not consider the sufficiency of a superseded complaint . . . .' " (*Amarel v. Connell* (1988) 202 Cal.App.3d 137, 144 [248 Cal.Rptr. 276].)

and the four-year provisions." (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 126 [23 Cal.Rptr.2d 268]; see *Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328, 334–336 [187 Cal.Rptr. 14].)

Plaintiffs filed their malpractice complaint in the instant case on August 13, 2009, clearly within any possible four-year limitations period (as the underlying business litigation began Oct. 28, 2005).

With regard to whether the one-year limitations period precludes plaintiffs' action, there are three issues that must be addressed: (1) did plaintiffs discover Chavos's wrongful act(s) or omission(s) more than one year prior to August 13, 2009; (2) if discovery occurred, was the statute of limitations tolled because the attorney(s) at issue continued to represent plaintiffs; and (3) if discovery occurred, was the statute of limitations tolled because plaintiffs had not sustained actual injury at the time they discovered Chavos's wrongful act?

*Tolling by Continued Representation*

The second question is easiest to answer, so we address it first. Given the procedural posture of this case, the earliest the statute of limitations could be deemed to start running with regard to claims against Chavos is June 5, 2008. This is the date on which plaintiffs' current counsel, Strickland, substituted into the underlying business litigation, replacing Chavos as counsel of record. Under section 340.6, subdivision (a)(2), the statute of limitations was tolled until Chavos ceased to represent plaintiffs in the underlying business litigation. (See *Beal Bank, SSB v. Arter & Hadden, LLP, supra,* 42 Cal.4th at p. 505 ["the statute of limitations for attorney malpractice claims arising from a given matter is tolled for the duration of the attorney's representation of the client in that matter"]; *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1062–1063 [109 Cal.Rptr.3d 392].) We may not look beyond the pleadings or judicially noticed documents to determine whether Chavos's representation of plaintiffs in the underlying business litigation ended earlier than June 5, 2008.

*Discovery of Wrongful Acts or Omissions*

■ We turn to the first question: When did plaintiffs discover Chavos's alleged wrongful acts and omissions? "It is well settled that the one-year limitations period of section 340.6 ' "is triggered by the client's discovery of 'the facts constituting the wrongful act or omission,' not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. 'It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.' " ' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685 [35 Cal.Rptr.3d 31].)

As of June 2008, Chavos had not succeeded in enforcing the judgment in the underlying business litigation. His only effort to do so backfired when Peter Goring succeeded in making a third party claim with regard to assets levied upon by Chavos. Plaintiffs hired Strickland in June 2008. She immediately (1) filed an action against numerous parties for fraudulent conveyances and other torts with regard to assets that allegedly could have been collected upon and (2) began conducting postjudgment discovery in the underlying business litigation. These facts illustrate that plaintiffs were aware of alleged omissions by Chavos in failing to take these same steps. Plaintiffs discovered Chavos's wrongful acts and omissions by June 2008, when Strickland took over representation in the underlying business litigation and filed the fraudulent conveyance action.

*Tolling by Lack of Actual Injury*

■ The final question is whether the statute of limitations was tolled from June 2008 through August 2008 because plaintiffs had not yet suffered (as of June 2008) any "actual injury" under section 340.6, subdivision (a)(1). This statutory tolling provision is rooted in the required element of "actual loss or damage" in a professional negligence action. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized— does not suffice to create a cause of action for negligence." (*Ibid.*) "[D]etermining when actual injury occurred is predominantly a factual inquiry. [Citations.] When the material facts are undisputed, the trial court can resolve the matter as a question of law . . . ." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*).)

"The test for actual injury under section 340.6 . . . is whether the plaintiff has sustained any damages compensable in an action . . . against an attorney for a wrongful act or omission arising in the performance of professional services. . . ." (*Jordache, supra*, 18 Cal.4th at p. 751.) "Ordinarily, the client already has suffered damage when it discovers the attorney's error." (*Id.* at p. 743.) "[O]nce the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period." (*Id.* at p. 752.) "There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury. The determination of actual injury requires only a factual analysis of the claimed error and its consequences. The inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor." (*Ibid.*)

██ "[S]ection 340.6, subdivision (a)(1), will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice." (*Jordache, supra*, 18 Cal.4th at p. 743.) "[T]he limitations period is not tolled after the plaintiff sustains actual injury [even] if the injury is, in some sense, remediable. [Citation.] Furthermore, the statutory scheme does not depend on the plaintiff's recognizing actual injury. Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 226–227 [31 Cal.Rptr.2d 525].) On the other hand, "the statute of limitations will not run during the time the plaintiff cannot bring a cause of action for damages from professional negligence" because the plaintiff cannot allege actual injury resulted from an attorney's malpractice. (*Jordache*, at p. 751.)

Plaintiffs in this case claim the statute of limitations should have continued tolling until plaintiffs had evidence that the judgment was collectible at the time Chavos committed malpractice, but not collectible after June 2008. In other words, Chavos's acts and omissions may have been harmless if it turned out there was nothing available in 2006 or 2007 to levy upon or, alternatively, if Strickland succeeded in enforcing the judgment. Plaintiffs propose that "actual injury" did not occur until at least mid-August 2008, when judgment debtor examinations began providing evidentiary support for the allegations in the fraudulent conveyance action (which was filed in June 2008). Indeed, at oral argument, plaintiffs' counsel asserted that she believed the statute of limitations continued tolling until the resolution of the fraudulent conveyance action.[3] Plaintiffs assert that because damages in a malpractice suit would necessarily be contingent upon whether, and to what extent, the judgment was enforceable during the Chavos representation and the Strickland representation, the statute of limitations was tolled beyond June 2008.

In our view, plaintiffs confuse the question of whether they had (as of June 2008) sustained "actual injury" (§ 340.6, subd. (a)(1)) with two other questions: (1) whether they had sufficient evidence to prove damages in a malpractice action as of June 2008 and (2) whether all uncertainty had been removed with regard to the amount of damages they had suffered.

Our Supreme Court made clear in *Jordache* that "[t]he loss or diminution of a right or remedy constitutes injury or damage. [Citation.] Neither uncertainty of amount nor difficulty of proof renders that injury speculative or inchoate." (*Jordache, supra*, 18 Cal.4th at p. 744; see *Budd v. Nixen, supra*, 6 Cal.3d at p. 201 ["The cause of action arises, however, before the client

---

[3] According to counsel's representation at oral argument, the fraudulent conveyance action ultimately resulted in another default judgment in favor of plaintiffs.

sustains all, or even the greater part, of the damages occasioned by his attorney's negligence."].) The facts at issue in *Jordache* are illustrative. A client sued its former attorney for not tendering the defense in an underlying lawsuit to a liability insurer, thereby providing the insurer with a plausible timeliness of notice excuse for not defending the lawsuit. (*Jordache*, at pp. 744–746.) The court held that the client had suffered damages no later than the date they hired new counsel (both to litigate the underlying case and to pursue the insurer for coverage): the client "had lost millions of dollars— both in unpaid insurance benefits for defense costs in the [underlying] action and in lost profits from diversion of investment funds to pay these defense costs." (*Id.* at p. 752.) Responding to concerns that damages could be established only after litigation with the insurer had concluded, the court explained: "The coverage litigation's resolution was relevant to [the attorney's] alleged negligence only insofar as it potentially affected the amount of damages [the client] might recover from [the attorney]." (*Id.* at p. 753.)

We conclude plaintiffs suffered "actual injury" by June 2008. Through various alleged acts and omissions, Chavos failed to enforce plaintiffs' roughly $1 million judgment in the underlying business litigation from mid-2006 through June 2008. The lack of any recovery on this substantial money judgment represents an actual injury sufficient to support a legal malpractice cause of action under *Jordache, supra*, 18 Cal.4th 739. As a result of Chavos's alleged professional negligence, Strickland filed a fraudulent conveyance action in June 2008 to try to recover assets that had allegedly been removed from the ownership of Sun Limousine. The alleged removal of these assets negatively affected the ability of Strickland to enforce (in whole or in part) the $1 million judgment against Sun Limousine in the underlying business litigation. The diminution of plaintiffs' ability to enforce the judgment in the underlying business litigation represented "actual injury."

■ It is certainly true that the $1 million judgment might not represent the amount of damages that would be awarded against Chavos in a legal malpractice action. For one, after reviewing the evidence presented by both sides, a jury in a malpractice action might find Chavos did not breach his duty of care and/or find that the judgment was not collectible (in whole or in part) regardless of what efforts were brought to bear by Chavos. (See *DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499, 1508 [33 Cal.Rptr.2d 219] ["to the extent the alleged malpractice consisted of [the] failure to enforce the stipulated judgment, collectibility was an element of the case"].) But "actual injury" for purposes of section 340.6 cannot depend on absolute proof as a matter of law that damages were suffered. The factual question of whether the judgment was actually collectible goes to the merits of the malpractice action, not the question of whether the statute of limitations tolled. Put another way, it would be nonsensical to require a malpractice defendant to prove that the plaintiff actually suffered damages in order to prevail on a statute of

limitations affirmative defense (just as it would be nonsensical to require a malpractice defendant to prove that he or she actually committed a wrongful act or omission). Section 340.6 pertains to the discovery of an *alleged* wrongful act or omission, and "actual injury" that logically follows assuming the allegations of wrongful acts or omissions are correct.

Secondly, plaintiffs' continued litigation with Sun Limousine, Xtreme Coach, and Peter Goring could reduce the amount of damages caused by Chavos's alleged negligence. If Strickland succeeds in her efforts to recover money for plaintiffs after June 2008, any potential damages award against Chavos would be reduced by the amount recovered by Strickland. (See *Norton v. Superior Court* (1994) 24 Cal.App.4th 1750, 1758 [30 Cal.Rptr.2d 217] ["Where the attorney's negligence does not result in a total loss of the client's claim, the measure of damages is the difference between what was recovered and what would have been recovered but for the attorney's wrongful act or omission."].)

But Strickland's efforts to remedy the perceived shortcomings of Chavos's representation do not toll the statute of limitations. This is not a case in which the "existence and effect of attorney error . . . depend[s] upon a judicial resolution" of a separate action. (*Shifren v. Spiro* (2012) 206 Cal.App.4th 481, 487 [141 Cal.Rptr.3d 764] [holding that actual injury did not occur until client lost dispute in separate action regarding trust document drafted by malpractice defendant attorney].) Even if Strickland were to succeed beyond plaintiffs' wildest dreams and recover the full amount owed under the $1 million judgment, it can still be posited that Chavos committed wrongful acts and omissions. Furthermore, plaintiffs' "actual injury" would survive in the form of (1) a claim for the lost time value of money (i.e., Chavos's delay may have prevented plaintiffs from obtaining their money earlier, rather than in a collateral fraudulent conveyance action) (*Jordache, supra*, 18 Cal.4th at p. 752) or (2) a claim for attorney fees paid to Strickland above and beyond what needed to be incurred in the collection portion of the case as a result of Chavos's alleged malpractice (*id.* at pp. 750–751). Ongoing litigation can neither "exonerate" Chavos, nor "extinguish" an action against Chavos. (*Id.* at p. 753.) There is a difference between "an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (*Id.* at p. 754.)

 Here, by allegedly failing to promptly and competently pursue enforcement of the judgment in the underlying business litigation, Chavos caused "actual injury" to plaintiffs. Further proceedings might remedy or reduce these damages. But only the instant malpractice action could result in findings as to whether Chavos actually committed malpractice and whether

the judgment could have been enforced effectively in 2006 and 2007 (in whole or in part) had Chavos not been negligent. We affirm the judgment of dismissal.

## DISPOSITION

The judgment is affirmed. Defendants Anthony G. Chavos and Chavos & Rau shall recover costs incurred on appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

On July 18, 2012, the opinion was modified to read as printed above.