Filed 2/25/13  Gracey v. Tiles, Webb, Kulla & Grant CA2.7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| WAYNE W. GRACEY, et al., | B234634 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC419069) |
| TILLES, WEBB, KULLA & GRANT, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Mesisca, Riley & Kreitenberg, Dennis P. Riley, Rena E. Kreitenberg and Steven C. De Vore for Plaintiffs and Appellants.

Robie & Matthai, Edith R. Matthai and Natalie A. Kouyoumdjian for Defendants and Respondents.

_____

Appellants are successors-in-interest to owners of commercial property in Beverly Hills who sought legal advice from respondents, the Law Firm of Tilles, Webb, Kulla & Grant (TWKG) and one of their individual partners, in connection with a lease of that property.[1]  Appellants filed a complaint containing several causes of action against respondents with respect to a contingency fee agreement for this legal representation and respondents cross-complained.

The trial court granted summary judgment/summary adjudication in favor of respondents on the complaint and denied appellants' motion for summary judgment/summary adjudication on respondents' cross-complaint.  We affirm the judgment (orders granting and denying summary judgment and summary adjudication).

*FACTUAL & PROCEDURAL BACKGROUND*

*The Commercial Lease*

In 1929, the predecessors-in-interest of appellants Gracey, Suzanne Melin, David Melin, Paul and Marla Lefler, Donal B. Botkin and Meeker entered into a ground lease agreement with First National Bank of Beverly Hills for real property located at 465 N. Beverly Drive in Beverly Hills.  (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 428-429.)  The lease term was for 95 years, to expire in 2024.  It provided for a monthly rental rate of $2,000 per month, but had a provision which increased the rental rate when the price of gold increased (the Gold Clause).  (*Ibid.*)

---

[1]  Appellants are Wayne Gracey, as Substitute Trustee of the William E. Woods and Mary Corinth Woods Trust (Gracey); Vernon Giles, as Trustee of the Fry Family Trust of 1990 (Giles); Suzanne Melin, as Trustee of the Melin Beverly Hills Trust No.1 (Suzanne Melin); David Melin, as Substitute Trustee of the Melin Beverly Hills Trust No. 2 (David Melin); Paul Kelly Lefler (Paul Lefler) and Marla Lefler (Marla Lefler), as Co-Trustees of the Paul Kelly Lefler Living Trust; Marianne Meeker, as Successor Trustee of the Linthicum Family Trust (Meeker); and Donal V. Botkin, an individual (Botkin).  Respondents are the TWKG and one of their individual partners, Stephen P. Webb (Webb).

In 1933, a federal law was enacted which rendered the Gold Clause invalid. In 1977, the law was amended to allow clauses similar to the Gold Clause in any obligation issued after October 1977, but did not revive them in existing contracts. (*Wells Fargo, supra,* 32 Cal.App.4th at pp. 428-429.)

First National Bank assigned its interest in the lease to Triangle Company, which in turn subleased the property to Bank of America. In 1981, Triangle terminated the sublease with Bank of America and Bank of America became the new lessee under the 1929 lease, assuming all obligations under it. In 1988, the successors-in-interest to the parties who signed the 1929 lease (collectively the Owners) took the position the assignment created a new obligation, permitting them to enforce the Gold Clause. Bank of America rejected this position and the proposed increase in payments, and the Owners decided to sue to enforce the Gold Clause.

*The Gold Clause Litigation*

The Owners interviewed several law firms to represent them in the enforcement of the Gold Clause. They solicited and received numerous fee proposals from several law firms. In September 1991, the Owners notified Webb that TWKG had been selected to represent them. The Owners and TWKG exchanged several drafts of a proposed contingency fee agreement. Owner George Linthicum was designated as the agent for all the owners except for the William and Mary Woods Trust. The William and Mary Woods Trust designated Wells Fargo Bank as its trustee. In-house counsel for Wells Fargo, Botkin and Linthicum negotiated the terms of the contingency fee agreement with TWKG. The contingency fee agreement (CFA) ultimately agreed upon was dated October 29, 1991, and according to Webb, each of the Owners, with the exception of Linthicum's mother, Josephine Stinson, signed the CFA and returned it to him.[2]

---

[2] Linthicum informed Webb that Stinson was in the process of assigning her interests in the property to him and did not wish to be a party to the litigation.

3

The terms of the CFA provided, inter alia, TWKG's fee would be 20 percent of all rent received over the base amount of $2,000 per month.

*Amendment to the Contingency Fee Agreement*

On December 4, 1991, TWKG wrote to the Owners to inform them there had been a provision inadvertently omitted from the CFA. The letter (Supplemental Letter) stated, inter alia, "California Business and Professions Code [section 6147] now mandates that contingency fee agreements entered into between the parties specifically state in writing that the contingency fee that we have agreed upon 'is not set by law, but is negotiable between attorney and client.' This sentence was omitted because, as a practical matter, it was believed that all of you were clearly aware of the fact that the contingency fee agreement entered into between us was heavily negotiated at arm's length over a period of time. . . ."

The Supplemental Letter was sent to Lefler, Stinson, Linthicum, Botkin, Arthur Melin, Thomas Melin, and Alexandra Laboutin, trustee of the Woods trust. Each owner signed and returned the letter to Webb, with the possible exception of appellant Botkin.[3]

*The Gold Clause Litigation and Appeal*

TWKG filed a complaint on behalf of Owners against Bank of America on October 31, 1991. The named plaintiffs in that case were Wells Fargo Bank, N.A., as trustee of the Woods trust; Thomas Melin as trustee of the Melin Beverly Hills Trust No. 1; Arthur Melin, as Trustee of the Melin Beverly Hills Trust, No. 2; Peggy Lefler, as Trustee of the Maude Parks Kelso Trust; Botkin, an individual; and Linthicum, an individual. The case was tried on stipulated facts and the trial court ruled in favor of Bank of America. The Owners appealed. Owners hired appellate counsel but TWKG

---

[3] Webb believed he received an executed copy from Botkin, but was unable to locate it. Botkin did not know if he had signed it.

remained co-counsel of record.[4] In 1995, in a published decision, *Wells Fargo v. Bank of America, supra,* 32 Cal.App.4th 424, the Court of Appeal reversed the judgment in favor of Bank of America and held the Owners were entitled to enforce the Gold Clause. The judgment also provided for attorneys fees in accordance with the terms of the lease. The effect of this decision was that the Owners were allowed to increase the rent to $37,000 per month. As the price of gold increased over the years, the rent rose to more than $85,000 per month.

Bank of America wired back rents to TWKG's trust account. In July 1995, TWKG sent each of the Owners their share of the back rents. With each check was a letter outlining the amount paid as well as the amount TWKG was retaining as payment pursuant to the CFA. In August 1995, TWKG sent a letter to the Owners stating that TWKG had competed its services under the terms of the CFA and that the attorney-client relationship was terminated.

In 1995, Linthicum, acting on behalf of the Owners, negotiated an amendment to the Lease (Lease Amendment). This amendment included a provision instructing Bank of America to pay 20 percent of the rent to TWKG as allowed under the CFA. TWKG was not a party to these negotiations nor to the Lease Amendment but drafted the contract pursuant to Linthicum's instructions. In August of every year between 1995 and 2006, Linthicum wrote to Bank of America outlining instructions on payment of rent, including

---

[4] Appellants claimed in their motion for summary judgment that they terminated TWKG's and Webb's involvement once the Gold Clause litigation was being appealed. A review of the correspondence indicates that in 1993, Linthicum told Webb that the Owners were hiring new appellate counsel. Webb wrote a letter to the Owners confirming they told him they had "made the decision to terminate [TWKG's] services and to retain new counsel relative to handling the appeal" but that Webb would still be dealing with post-judgment matters. Thereafter, as late as June 1994, the Owners wrote letters to each other discussing whether Webb should still be retained as counsel. In the record in the Gold Clause appeal, Webb was designated as co-counsel. (*Wells Fargo v. Bank of America, supra*, 32 Cal.App.4th at p. 427.)

5

that 20 percent of the rent be paid to TWKG. During this period, no one ever disputed or questioned these payments.

*The Appearance of Meeker*

In 2006, Linthicum became ill. His daughter, Marianne Meeker (one of appellants), an attorney licensed to practice in the state of Washington, became the business manager for the Owners. Meeker reviewed all the documents relating to the Lease, and began to question TWKG's right to the 20 percent fee. The Owners retained Meeker to represent them in an effort to set aside the CFA.

In August 2006, Meeker wrote to TWKG stating that she represented the Owners, was familiar with all the background facts and circumstances surrounding the Gold Clause litigation, and claiming that TWKG was not entitled to the 20 percent fee. In a letter dated August 16, 2006, she told Webb: "I cannot find any documentation that reflected an amendment to your fee agreement that entitles you to a contingency fee on the proceeds of the judgment." On August 24, 2006, she wrote again saying, "[I]t seems apparent that the owners, of whom my father would have had no authority to agree to a renegotiated contract, were simply acquiescing to a demand for payment under the original fee agreement that clearly did not entitle your firm to a percentage interest in the rents generated or the award. Several other irregularities appear to exist in the whole transaction but suffice to say, the owners are formally disputing the fees being paid to your firm, past, present, and future. From today forward you are to place any payments to you from Bank of America in your trust account until the dispute is resolved. . . . I am certainly willing to discuss this matter with you or members of your firm to see if it is possible to reach an agreement, but otherwise please consider this letter a formal demand for arbitration through the California Bar Association."

The next day, she wrote another letter to Webb which stated: "I was aware of the amendment and thoroughly reviewed it. The amendment is a contract between the owners and the Bank. I do not see how it meets the requirements for an amended (materially changed) contingency fee agreement under California law. . . . . Your firm is not a party to the lease and your firm does not own an interest in the property. I realize

6

that the parties were not unsophisticated, but they were lay people and they had a right to rely on your assertion that you were entitled to do this because of your duties of disclosure toward them. It just seems to me that this amendment was overreaching. . . . In conclusion, please be aware that this is a dispute concerning the reasonableness of fees and the conscionability of the agreement, if there is one. . . . I am operating under a set of assumptions based on the records in my possession and from these records I have concerns about the conclusions to which they lead. . . ." She then listed several "bullet points" which included the following: "California Law requires changes in contingency agreements to be valid only with informed consent and written advice to seek independent counsel and is non-delegable. . . . Authority to consent to material changes in terms needed to be obtained individually from each plaintiff and could not be delegated when you sought to change a material term of the agreement. . . . You cannot shift the individual obligation of each plaintiff to pay a share of a contingency fee by drafting a document giving yourself an interest in the lease proceeds without informed and written consent from each and every client and without advice in writing to seek independent counsel. . . . There is no statute of limitations on the assertion of ethical violations concerning the reasonableness of fees or other ethical violations concerning improper fee agreements. . . . Unconscionable contracts are void in spite of agreement. . . . Void contracts are unenforceable. . . . Unwritten contingency agreements or materially altered agreements are per se unenforceable under California Law. . . . Please reconsider your position to ignore my request to place disputed fees in trust."

On August 28, 2006, she wrote: "I will be gathering documents and taking the necessary steps to initiate arbitration because of the time constraints." She followed up these letters with a steady stream of correspondence to TWKG for two years. During this time, Meeker continued to authorize Bank of America to pay TWKG its fees pursuant to the CFA. Then from February 2007 to April 2008, Meeker abruptly stopped writing to TWKG or its counsel. During this period, in August 2007, Meeker again sent written authorization to Bank of America to pay TWKG the 20 percent fee. Bank of America continued to make the payments in 2007 and 2008.

7

In October 2007, Linthicum passed away and Meeker became the trustee and executor of his estate.

*The underlying lawsuit*

On July 31, 2009, the Owners, [5] represented by a California law firm, filed this action against TWKG, seeking to invalidate the CFA and the Lease Amendment. The complaint contained causes of action for declaratory relief that the CFA was void, declaratory relief that the Lease Amendment was void, breach of fiduciary duty, professional negligence, intentional misrepresentation, concealment, and money had and received. A First Amended Complaint (FAC) was filed in January 2012 with the same causes of action. TWKG answered and filed a cross-complaint for breach of contract, intentional interference with contractual relations, and declaratory relief.[6]

*The Summary Judgment Motions*

On August 27, 2010, TWKG filed a motion for summary judgment on the FAC contending that the Owners' claims were barred by the statute of limitations.

On November 24, 2010, the Owners filed a motion for summary adjudication on the FAC and summary judgment on the cross-complaint.

On December 22, 2010, TWKG filed a second motion for summary judgment on the FAC, contending that neither the CFA nor the Lease Amendment was voidable under Business and Professions Code section 6147, and that the CFA and Lease Amendment were ratified by the Owners, and that the Owners/Plaintiffs lacked standing.

*The rulings*

The motions for summary adjudication and summary judgment were set for hearing on March 10, 2011. The court initially granted summary adjudication in favor of TWKG and Webb on the fifth and sixth causes of action for misrepresentation and concealment, holding that they were barred by the one-year statute of limitations of Code

---

[5]    By this time, the Maude Parks Kelso Trust had been split into the Fry Family Trust and the Paul Kelly Lefler Trust.

[6]    The cause of action for intentional interference was subsequently dismissed.

8

of Civil Procedure section 340.6. It also granted summary adjudication in favor of TWKG and Webb on the first, second and seventh causes of action for declaratory relief and money had and received on the basis that the Owners/Plaintiffs ratified the CFA and the Lease Amendment by continuing to make payments from 2006 through 2008. It denied the Owners' motion for summary judgment on the cross-complaint. The court allowed supplemental briefing on whether the third and fourth causes of action for breach of fiduciary duty and professional negligence were also time-barred by the statute of limitations. After the supplemental briefing was submitted, it ruled that the third and fourth causes of action were also barred by the one-year statute of limitations, and stated, "[t]he combined effect of this ruling is to grant summary judgment in full on the complaint in favor of TWKG." The cross-complaint remained pending, but the parties later stipulated to entry of judgment on the cross-complaint.

Judgment was entered on June 14, 2011, in favor of TWKG and Webb on the complaint and in favor of TWKG on the cross-complaint.

*CONTENTIONS ON APPEAL*

Appellants contend on appeal the trial court erred in granting summary judgment and summary adjudication because (1) respondents did not comply with Business and Professions Code section 6147, and thus the CFA is voidable; (2) it erroneously concluded that appellants' evidence was inherently unreliable; (3) the causes of action for intentional misrepresentation are not barred by the statute of limitations; (4) respondents falsely represented that the purpose of the Lease Amendment was to simplify rent payments and appellants could not have known this; (5) the payment of rents did not constitute actual injury; (6) respondents' intentional concealment of their legal files estops them from asserting the statute of limitations defense; and (7) the causes of action for professional negligence and breach of fiduciary duty were not barred by the statute of limitations.

Appellants also contend the trial court erred in denying their motion for summary judgment on the cross-complaint because the CFA did not comply with Business and

9

Professions Code section 6147, and they can only recover for services by quantum meruit.

*DISCUSSION*

*1. Summary Judgment rules*

A motion for summary judgment is properly granted if all the papers submitted show that there is no triable issue as to any material fact and that a party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd.(c).) A moving defendant may meet its burden on summary judgment by establishing a complete defense to each cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) We review a trial court's decision to grant summary judgment de novo, considering all of the evidence set forth in the supporting and opposition papers, if not subject to any valid evidentiary objections, and all uncontradicted inference reasonably deducible from that evidence. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

As set forth below, we find the trial court properly granted summary adjudication for TWKG and Webb on each cause of action in the FAC and properly denied appellants' motion for summary judgment on the cross-complaint.

*2. The First, Second, and Seventh Causes of Action*

The first (declaratory relief that the CFA was void), second (declaratory relief that the Lease Agreement was void), and seventh (money had and received) causes of action of the FAC were based on TWKG's alleged non-compliance with Business and Professions Code section 6147.

The trial court granted summary adjudication on these causes of action on the grounds that the Owners ratified the CFA and the subsequent letter amending the CFA by their subsequent actions and because the Lease Agreement did not need to meet the requirements of Business and Professions Code section 6147.

*a. Ratification*

Civil Code section 1588 provides that "[a] contract which is voidable solely for want of due consent may be ratified by a subsequent consent." The party charged with ratification must have fully known what he or she was doing. The very essence of

10

ratification is that it is done with full knowledge of the party's rights." (*Fergus v. Sanger* (2007) 150 Cal.App.4th 552, 571, quoting *Brown v. Rouse* (1894) 104 Cal. 672, 676.) In *Fergus*, as soon as the respondent learned the contingency fee agreement with his attorney was voidable, he voided the agreement. (*Fergus v. Sanger*, *supra*, 150 Cal.App.4th at p. 571.) Here, in contrast, even after Meeker sent several letters to TWKG on the Owners' behalf indicating their belief that the agreement was void in 2006, and even after TWKG refused to place the disputed funds in a trust account, Meeker continued to direct Bank of America to deposit the 20 percent portion of the rent due into TWKG's account for years. Each time Meeker directed the Bank of America to pay TWKG the Owners clearly ratified the CFA, and thus the CFA cannot be declared void.

In their reply brief, appellants contend Meeker could not have ratified a contract between Owners and TWKG and in addition, she did not know the CFA was voidable. However, Meeker's letters to TWKG in 2006 clearly indicate she was an attorney, representing all the Owners, and was familiar with all the background facts and circumstances regarding the CFA, Supplemental Letter and Lease Amendment. She formally disputed the fee arrangement and contended "several other irregularities appear to exist in the whole transaction." She referred to the Supplemental Letter and claimed that it did not meet California law requirements for contingency fee agreements. She referred to California law which requires changes in contingency fee agreements to have informed consent with written advice to seek independent counsel, individual consent to material changes from each plaintiff, and argued that void contracts are unenforceable. The only possible interpretation of these statements is that Meeker was claiming that the CFA, Supplemental Letter and Lease Agreement were voidable. She then asked for payments under the Lease to be placed in trust. Her subsequent actions authorizing the lease payments ratified the terms of the fee contract.

Appellants' citation of *Blanton v. Womancare* (1985) 38 Cal.3d 396 for the proposition that an attorney cannot alter the rights of a contracting party is inapposite. In *Blanton*, the attorney had no authority to bind his client to an agreement for arbitration

11

since he was engaged to litigate in a judicial forum. (*Id*. at pp. 407-408.) Here, Meeker's letter made it clear that she was engaged by the Owners' successors to assert their rights against TWKG with respect to the CFA, Supplemental Letter, and Lease Agreement. At no other point did the Owners disagree with Meeker's assertions.

b. *Supplemental Letter and the Lease Amendment*

Owners contend that the Lease Amendment, which provided a mechanism for Bank of America to pay part of the rent to TWKG, as well as the Supplemental Letter to the CFA, were material modifications to the CFA and also required compliance with Business and Professions Code section 6147. In support of the contention, they cite *Stroud v. Tunzi* (2008) 160 Cal.App.4th 377. In *Stroud*, however, the modification substantially increased the amount of fees to be paid to the attorneys. The court held that any material change to a contingency fee agreement requires compliance with Business and Professions Code section 6147. Neither the Supplemental Letter nor the Lease Amendment increases the amount of fees due to TWKG, nor can we construe them as "material changes" to the CFA. The Supplemental Letter clearly indicated that it was sent in order to comply with Business and Professions Code section 6147 and the Lease Amendment provided a vehicle for payments to be made. None of these changed the method of computing fees or the amount due. More importantly, TWKG was not a party to the Lease Amendment; it was only an agreement between the Owners and Bank of America drafted by TWKG. Meeker herself recognized this in her letter to Webb on August 25, 2006, in which she stated: "The amendment is a contract between the owners and the Bank. I do not see how it meets the requirements for an amended (materially changed) contingency fee agreement under California law." The Lease Amendment did not need to comply with Business and Professions Code section 6147.

c. *Signed Copies of the CFA and Supplemental Letter*

Business and Professions Code section 6147 requires that the attorney shall provide to the client a duplicate copy of the contingency fee contract, signed by both the attorney and the client.

12

Appellants contend that only some of the clients had copies of the CFA and Supplemental Letter which they signed, that they did not have copies signed by the other Owners, and also that Botkin did not sign either of these documents. They submitted declarations in support of their motions for summary judgment and summary adjudication and in opposition to TWKG's motion for summary judgment, in which the various plaintiffs stated that the records maintained by their predecessors do not contain copies of the fully executed copies of either the CFA or the Supplemental Letter.

TWKG filed evidentiary objections to these declarations.

Webb's declaration establishes that none of the original clients except for Botkin are appellants. His declaration also established that he sent signed copies of the CFA and the Supplemental Letter to each client and never received any of them back by return mail, nor was he ever notified at any point in time that any of the Owners had not received the signed copies.

The trial court found that the original clients of TWKG are no longer living, except for Botkin. Appellants' declarations did not state that the clients were never provided with the duplicate executed copies, only that appellants and Botkin reviewed the files and could not find copies. The trial court ruled that the declarations did not establish that the copies were never provided. It also ruled that Business and Professions Code section 6147 does not require that every client receive copies signed by every other client. Finally, it found the lack of Stinson's signature was not fatal to the validity of the cause of action because she was not a named plaintiff in the underlying action.

On appeal, appellants contend the trial court erred in finding the declarations unreliable. We disagree. The declarations submitted by appellants do not contain any facts which dispute Webb's declaration, only conclusions from the lack of documentation in the file. The allegations that TWKG did not provide signed duplicate copies as required by the statute are not supported by evidence, and thus the causes of action based on violation of that requirement of Business and Professions Code section 6147 cannot be maintained. (*In re United Parcel Service* (2010) 190 Cal.App.4th 1001, 1018.)

13

*3. Statute of Limitations*

The trial court granted summary adjudication of the third (breach of fiduciary duty), fourth (professional negligence), fifth (intentional misrepresentation), and sixth (concealment) causes of action of the FAC on the grounds they were barred by the one-year limit of Code of Civil Procedure section 340.6.

Code of Civil Procedure section 340.6 provides for a one-year statute of limitations in an action against an attorney "for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." The time starts to run "after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that . . . (1) the plaintiff has not sustained actual injury. . . ."

The applicable statute of limitations is a legal issue subject to de novo review. (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880; *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 291.)

*a. Third and Fourth causes of action*

The third and fourth causes of action alleged breach of fiduciary duty and professional negligence. There is no dispute that actions against an attorney for professional negligence are governed by the one-year statute of limitations of Code of Civil Procedure section 340.6. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 68.)

Appellants argue that these causes of actions do not allege professional negligence in the sense that legal mistakes were made, but instead allege a voidable contract for the payment of fees, and thus the more general four-year statute of limitations of Code of Civil Procedure section 343[7] applies.

---

[7] Code of Civil Procedure section 343 provides for a four-year statute of limitations for any action not specifically addressed by the statutes.

14

There are no published decisions on the applicable statute of limitations for a violation of Business and Professions Code section 6147.

Appellants cite *Martin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, where the court of appeal applied the four-year statute of limitation to claims involving Government Code section 1092 because there was no specific statute of limitations for that statute. But here, an examination of appellants' claims reveals that they are alleging that TWKG failed to comply with Business and Professions Code section 6147 when entering into a fee agreement (the CFA) during the course of their professional relationship. This is precisely the type of act or omission the performance of professional services that Code of Civil Procedure section 340.6 governs. (*Quintilliani v. Mannerino, supra,* 62 Cal.App.4th at p. 68; see *Levin v. Graham & James* (1995) 37 Cal.App.4th 798, 804 [portion of claim against attorneys related to amount of fees collected].)

At oral argument, the parties raised the issue of whether a claim for excessive attorney fees can be characterized as legal malpractice and thus whether Code of Civil Procedure section 340.6 applies. In *Schultz v. Harney* (1994) 27 Cal.App.4th 1611, clients of an attorney sued him for legal malpractice and fraud. The basis of their action against the attorney was that he charged excessive and unreasonable fees and had falsely represented that the fees he charged were legal. The attorney had been unwilling to accept the case subject to the fee limitations contained in Business and Professions Code section 6146 (which sets limits for contingent fees for legal representation in personal injury actions against health care providers). He allegedly represented to the clients that those statutory provisions could be legally waived and drafted a written waiver for the client to sign before he agreed to accept the case. (*Id*. at p. 1616.) The attorney then successfully represented the clients, reaching a settlement for a large monetary sum. The fees he claimed were in excess of those which would have been collected had the provisions of Business and Professions Code section 6146 been applied. (*Id*. at p. 1617, fn. 3.) The attorney filed a demurrer to the complaint on the grounds, inter alia, that it did not state a cause of action for legal malpractice. The trial court sustained the demurrer

15

without leave to amend and the clients appealed. In concluding that charging excessive attorney fees can be characterized as legal malpractice, the court of appeal stated the attorney "had a duty to know and properly apply the applicable law relating to fees for his services in connection with the presentation and approval of the [settlement]. An integral part of those services is the justification for and setting of the attorney fees earned in achieving the [settlement]." (*Id*. at pp. 1621-1622.)

In this case, as in *Schultz*, the allegations for professional negligence also stem from the initial agreement setting attorneys fees and the failure to comply with a Business and Professions Code requirement. Clearly this case involves TWKG's knowledge and application of law relating to fees for their services. In addition, the record reflects that the Owners solicited and received numerous fee proposals from various law firms from March through April 1991. In May 1991, they began negotiations for services with TWKG, but did not sign the CFA until October 1991, only after several drafts of the proposed CFA were exchanged and modified. The Owners and TWKG were fully engaged in the process of setting the fee and had already engaged in negotiations prior to the acts or omissions which formed the basis of the professional negligence claim.

We conclude that failure to include the mandatory clause required by Business and Professions Code section 6147 in the CFA falls under the heading of professional negligence and thus is governed by the statute of limitations of Code of Civil Procedure section 340.6.

The next issue to examine in these causes of action is when the time period began.

Under Code of Civil Procedure section 340.6, malpractice action commences once a former client discovers his attorney's malpractice and suffers actual injury. If a client has not sustained actual injury, the limitations period is tolled. (Code Civ. Proc., § 340.6, subd. (a)(1).)

"It is well settled that the one-year limitations period of [Code of Civil Procedure] section 340.6 '"is triggered by the client's discovery of 'the facts constituting the wrongful act or omission,' not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable . . . ."'"

16

(*Peregrine Funding Inc. v. Sheppard Mullin Richter & Hampson LLC* (2005) 133 Cal.App.4th 658, 685; *Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1146.) Appellants' discovery of the facts constituting the alleged wrongful act was in August 2006 at the latest as evidenced by Meeker's letter.

The Owners claim they did not suffer actual injury until they actually knew that the CFA was voidable. However, their knowledge of the voidability of the CFA is irrelevant; it is the date of the actual injury which controls.

The test for actual injury under Code of Civil Procedure section 340.6 is "whether the plaintiff has sustained any damages compensable in an action . . . against an attorney for a wrongful act or omission arising in the performance of professional services." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751; *Callahan v. Gibson Dunn & Crutcher* (2011) 194 Cal.App.4th 557, 568-569.) "Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (*Id*. at p. 750, italics omitted.) "There are no short cut 'bright line' rules for determining actual injury under [Code of Civil Procedure] section 340.6. [Citations.] Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." (*Id.* at p. 761, fn. 9.)

Here, each of the Owners' causes of action is premised on the allegation that TWKG's failure to provide adequate professional services caused them to pay excessive attorneys fees. Owners' knowledge pertaining to whether the CFA was voidable is irrelevant to the issue of actual injury. (*Croucier v. Chavos, supra*, 207 Cal.App.4th at p. 1148.)

The undisputed facts establish that Owners sustained actual injury as early as July 1995, when they wired into TWKG's trust account 20 percent of the back rents. These damages were sufficiently "manifest, non-speculative and mature" for Owners to plead a cause of action for malpractice. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison, supra,* 18 Cal.4th at p. 752.) Thus, the actual injury occurred in July 1995, more than 13 years before the lawsuit was filed in 2009.

Therefore, either using the one-year period from discovery or the four-year period from actual injury, these causes of action are time-barred.

### b. *Fifth and Sixth Causes of Action*

Appellants contend that the fifth and sixth causes of action (intentional misrepresentation and concealment) are not controlled by Code of Civil Procedure section 340.6. They contend that the three-year limit of Code of Civil Procedure section 338 or the four-year limit of Code of Civil Procedure section 343 apply instead.

Code of Civil Procedure section 338 provides for a three-year statute of limitations for actions for fraud or mistake. The cause of action is deemed to have accrued upon discovery of facts constituting the fraud or mistake. Code of Civil Procedure section 340.6 applies to all actions, except for fraud, which are brought against an attorney for a wrongful act or omission which arises in the performance of professional services. Code of Civil Procedure section 340.6 applies to any cause of action falling short of actual fraud. For example, claims against an attorney for breach of fiduciary duty or constructive fraud are governed by Code of Civil Procedure section 340.6. (*Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1364-1368; *Quintilliani v. Mannerino, supra,* 62 Cal.App.4th at p. 70.)

Appellants contend that they have claimed actual fraud in their fifth and sixth causes of action.

The label given to a cause of action is not dispositive. (*Vafi, supra*, 193 Cal.App.4th at p. 881.) The elements of actual fraud are (1) representation, (2) falsity, (3) knowledge of falsity, (4) intent to deceive and (5) reliance, resulting in damage. (*Vega v. Jones, Day Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291.)

An examination of the fifth and sixth causes of action demonstrates that they do not claim actual fraud. As the trial court correctly observed, the gravamen of these claims stem from TWKG's allegedly negligent conduct in the performance of professional services. The Supplemental Letter to the Owners makes it clear that TWKG omitted a required provision from the CFA and promptly informed its clients. There was no allegation or evidence supporting an intent to deceive or knowledge of its falsity.

18

Therefore, the statute of limitations of Code of Civil Procedure section 340.6 applies to the fifth and sixth causes of action and therefore they are time-barred. (*Quintilliani v. Mannerino, supra,* 62 Cal.App.4th at pp. 69-70.)

*4. Equitable estoppel as a bar to application of Code of Civil Procedure section 340.6*

Appellants contend that TWKG is estopped from using the statute of limitations as a defense because they completely controlled payment of the attorneys fees. They also claimed that they provided a legal interpretation of the Lease Agreement to Owners which enabled them to benefit from the onerous payments. Appellants contend that TWKG was retained to determine whether the CFA was voidable and since they did not inform Owners of the voidability, and insisted that the Lease Agreement supported the CFA, that they cannot use it against Owners to their disadvantage.

Appellants rely on the case *Leasequip Inc. v. Dapeer* (2002) 103 Cal.App.4th 394, in which an attorney advised corporation's personnel that they did not need to comply with corporate formalities. The corporation's status was suspended for failure to follow those formalities. The corporation sued the attorney for malpractice, but was unable to proceed because of the suspension of their corporate status. When it had been reinstated, the statute of limitations had passed. The court of appeal held that the attorney had deliberately misled the corporation, and the corporation had a right to rely on his legal advice although it was to its detriment.

Here, however, Owners were aware of the facts and legal ramifications surrounding the CFA. Meeker's August 16, 2006, letter establishes that she was familiar with the facts surrounding the original litigation and that she believed the CFA was void and unconscionable and that TWKG had breached its fiduciary duty. A second letter on August 28, 2006, affirmed her earlier letter and indicated that she had reviewed records, researched the law, and concluded that TWKG had engaged in wrongful conduct. She also indicated that she was taking "necessary steps to intitiate arbitration because of the time constraints." This supports the conclusion that she knew there was a legal cause of action and a statute of limitations problem.

19

*5. The Cross-Complaint*

Appellants' motion for summary judgment on TWKG's cross-complaint was denied, but appellants later stipulated to judgment in favor of TWKG after the court ruled on the other summary judgment and summary adjudication motions. Because appellants stipulated to judgment they cannot now complain, but in any event, we find the trial court's denial of their motion was proper for the same reasons we uphold the grant of summary judgment to TWKG on the complaint.

*DISPOSITION*

We affirm the judgment in favor of TWKG and Webb. Respondents are awarded costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**

20