[No. S141131. Sept. 27, 2007.]

BEAL BANK, SSB, Plaintiff and Appellant, v.
ARTER & HADDEN, LLP, et al., Defendants and Respondents.

504

COUNSEL

Leland, Parachini, Steinberg, Matzger & Melnick, Harvey L. Gould; Carroll, Burdick & McDonough, Vicki L. Freimann, Richard Fannan and David M. Rice for Plaintiff and Appellant.

Horvitz & Levy, David M. Axelrad and Frederic D. Cohen; Moscarino & Connolly, John M. Moscarino and Paula C. Greenspan for Defendants and Respondents.

Jones Day, Elwood Lui, Eugenia Castruccio Salamon; Snell & Wilmer and Richard A. Derevan for Los Angeles County Bar Association and Orange County Bar Association as Amici Curiae on behalf of Defendants and Respondents.

Heller Ehrman and Adam M. Cole for Bingham McCutchen, Cooley Godward Kronish, Farella Braun + Martel, Howard Rice Nemerovski Canady Falk & Rabkin, Morrison & Foerster, Orrick Herrington & Sutcliffe, Pillsbury Winthrop Shaw Pittman and Thelen Reid & Priest as Amici Curiae on behalf of Defendants and Respondents.

Robie & Matthai, Edith R. Matthai, Kyle Kveton and Steven S. Fleischman for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**WERDEGAR, J.**—Under California law, the statute of limitations for attorney malpractice claims arising from a given matter is tolled for the duration of the attorney's representation of the client in that matter. (Code Civ. Proc., § 340.6, subd. (a)(2).) When an attorney leaves a firm and takes a client with him or her, does the tolling in ongoing matters continue for claims against the former firm and partners? We conclude it does not and reverse the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1996, plaintiff Beal Bank, SSB (Beal Bank) acquired certain loans from another bank, which had been placed into conservatorship by the Federal Deposit Insurance Corporation (FDIC). The loan documents contained default interest clauses that provided that in the event of default, the entire balance of principal and interest would become due and thereafter bear interest at an increased rate over and above the contract rate. The debtors missed payments on some of the loans. By the time Beal Bank acquired the loans, the debtors had negotiated with the FDIC discounted payoffs of the remaining loans, but had failed to make those payments as well. Beal Bank sent the debtors notices of acceleration and default and recorded notices of default.

---

[1] Because this appeal is from the sustaining of a demurrer, we take the well-pleaded facts recited in plaintiff Beal Bank, SSB's first amended complaint as true. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

In March 1997, Beal Bank retained respondent Arter & Hadden, LLP, to handle its collection efforts. Respondent Eric Dean, a partner, was the attorney primarily responsible for the representation. Counsel for the debtors advised Arter & Hadden, LLP, through correspondence and other means, that Beal Bank had no legal or factual basis for attempting to collect the default interest.

In June 1997, the debtors transferred the collateral for the outstanding loans to an entity they controlled. On the following day, that entity filed for bankruptcy protection. Steven Gubner, an associate at Arter & Hadden, LLP, then began representing Beal Bank in the bankruptcy court. On Beal Bank's behalf, Arter & Hadden, LLP, filed a motion for summary judgment in the bankruptcy court, arguing that Beal Bank was entitled to recover the default interest. The bankruptcy court ruled against Beal Bank and entered its final order on May 28, 1998. Beal Bank appealed the matter to the district court.

On December 31, 1998, Gubner left the employ of Arter & Hadden, LLP, and formed Gubner & Associates, which later became Ezra, Brutzkus & Gubner. In turn, Gubner's new firms took over representation of Beal Bank. In April 1999, the district court affirmed the bankruptcy court's ruling, and Beal Bank, represented by Ezra, Brutzkus & Gubner, appealed to the Ninth Circuit Court of Appeals. On September 25, 2001, the Ninth Circuit issued its opinion, affirming the rulings of the lower courts. (*In re Crystal Properties, Ltd., L.P.* (9th Cir. 2001) 268 F.3d 743.)

On September 24, 2002, Beal Bank filed a legal malpractice action against the attorneys who had represented it in the unsuccessful litigation: Gubner; Gubner & Associates; Ezra, Brutzkus & Gubner; Arter & Hadden, LLP; and Dean. Two days later, Gubner filed a notice of withdrawal as counsel for Beal Bank in the bankruptcy court. All parties thereafter entered a tolling agreement covering the period September 24, 2002, to December 31, 2003, and Beal Bank dismissed the action.

On December 30, 2003, Beal Bank filed this action against the same defendants. It alleged defendants had failed to conduct any legal research, advise Beal Bank that its position was unlikely to prevail, or inform it of the risks involved in continuing to maintain its position. As a result, Beal Bank incurred unnecessary legal fees, was deprived of an opportunity to settle with the debtors on favorable terms, and was forced to defend a breach of contract action brought by the debtors.

Arter & Hadden, LLP, and Dean demurred, arguing that Beal Bank suffered an actual injury on May 28, 1998, the date the bankruptcy court entered an adverse ruling against it, which commenced the running of the one-year statute of limitations under Code of Civil Procedure section 340.6 on Beal Bank's malpractice claim. Relying on *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509 [80 Cal.Rptr.2d 94] (*Crouse*), which held that continuing representation by a firm's ex-attorney does not toll the statute of limitations against the firm, they argued that the statute of limitations was tolled as to them only until December 31, 1998, when Gubner left Arter & Hadden, LLP, taking Beal Bank with him as a client, and Arter & Hadden, LLP, ceased representing Beal Bank. Accordingly, the one-year limitations period expired on December 31, 1999.

In opposition, relying on *Beane v. Paulsen* (1993) 21 Cal.App.4th 89 [26 Cal.Rptr.2d 486] (*Beane*), which held that continuing representation by a firm's ex-attorney does toll the statute of limitations against the firm and its partners, Beal Bank argued that the statute of limitations was tolled during the time Gubner continued to represent Beal Bank and, by virtue of the parties' 2002 tolling agreement, its malpractice action was timely filed.

The trial court acknowledged the conflict of authority between *Crouse, supra,* 67 Cal.App.4th 1509, and *Beane, supra,* 21 Cal.App.4th 89. It found *Crouse* more persuasive, concluded the claims were time-barred, sustained the demurrers without leave to amend, and entered judgments of dismissal as to Dean and Arter & Hadden, LLP.[2]

On appeal, the Court of Appeal agreed with the reasoning of *Beane, supra,* 21 Cal.App.4th 89, disagreed with the reasoning of *Crouse, supra,* 67 Cal.App.4th 1509, and reversed. It held equitable considerations and potential disruption of the ongoing relationship between the departed attorney and client by an indemnity suit justified tolling the statute of limitations against the former firm.

We granted review to resolve this split of authority.

DISCUSSION

■ As in all cases of statutory interpretation, we begin with the language of the governing statute. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927 [22 Cal.Rptr.3d 530, 102 P.3d 915].) Our role in interpreting it is "to divine and give effect to the Legislature's intent." (*Brodie v. Workers' Comp. Appeals Bd.*

---

[2] Hereafter, we refer collectively to respondents Arter & Hadden, LLP, and Dean as Arter & Hadden.

(2007) 40 Cal.4th 1313, 1324 [57 Cal.Rptr.3d 644, 156 P.3d 1100].) If the statute's text evinces an unmistakable plain meaning, we need go no further. (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758 [47 Cal.Rptr.3d 216, 139 P.3d 1169].) If it is ambiguous, we may consider a variety of extrinsic sources in order to identify the interpretation that best effectuates the legislative intent. (*Ibid.*)

■ Code of Civil Procedure section 340.6, subdivision (a)[3] provides in part: "An action against an attorney for a wrongful act or omission . . . arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except [where specified circumstances give rise to tolling]." Thus, the limitations period is one year from actual or imputed discovery, or four years (whichever is sooner), unless tolling applies.

■ The parties agree this action is timely if and only if Gubner's continued representation of Beal Bank after he left Arter & Hadden tolled the claims against Arter & Hadden under section 340.6, subdivision (a)(2), which tolls claims so long as "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Significantly, while section 340.6, subdivision (a) defines the limitations period for "[a]n action against an attorney," the tolling provision in subdivision (a)(2) extends the limitations period only during ongoing representation by "[t]he attorney." Under ordinary rules of grammar, "[t]he attorney" in subdivision (a)(2) refers back to the "attorney" who is the target of the action in subdivision (a). (Cf. *People v. Briceno* (2004) 34 Cal.4th 451, 461 [20 Cal.Rptr.3d 418, 99 P.3d 1007] [word used in a statute presumed to have the same meaning throughout].) Thus, under the most natural reading of the statute, an action against an individual attorney is tolled so long as *that attorney* continues representation; conversely, an attorney's continued representation tolls an action only against that attorney.

The Court of Appeal dismissed the text of the statute by noting that section 340.6 has also been applied to actions against law firms (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739 [76 Cal.Rptr.2d

---

[3] All subsequent statutory references are to the Code of Civil Procedure.

749, 958 P.2d 1062] (*Jordache*); *Gold v. Weissman* (2004) 114 Cal.App.4th 1195 [8 Cal.Rptr.3d 480]), but this observation does not suggest a different reading. Although *Jordache* involved a malpractice action against a law firm, the court expressly declined to discuss or interpret subdivision (a)(2). (*Jordache*, at p. 747, fn. 5.) In *Gold*, the court analyzed subdivision (a)(2), but only in the context of interpreting the subdivision's "same subject" language and deciding how long representation by the defendant firm continued. (*Gold*, at pp. 1200–1201.) Neither case involved, as here, an action against both a law firm and an attorney no longer affiliated with that firm. Instead, each implicitly recognized that where a client hires a law firm to represent it, the provisions of section 340.6 apply to that firm; the term "attorney" in section 340.6 may embrace the entire partnership, law corporation, or other legal entity the client retains.

That either an attorney or a firm may be the subject of an action does not support a reading under which representation by one attorney or firm might toll the limitations period as to another no longer affiliated attorney or firm. Rather, the text implies an action against a law firm is tolled so long as *that firm* continues representation, just as an action against an attorney is tolled so long as *that attorney* continues representation, but representation by one attorney or firm does not toll claims that may exist against a different, unaffiliated attorney or firm.

The history leading up to the enactment of section 340.6 suggests a legislative intent consistent with this reading. Attorney malpractice actions were once governed by a strict two-year limitations period running from the time of the negligent act. (See § 339, subd. 1; *Laird v. Blacker* (1992) 2 Cal.4th 606, 610–611 [7 Cal.Rptr.2d 550, 828 P.2d 691].) In 1971, recognizing that this rule was "harsh," "unfair," and "discriminatory," we held that a malpractice action accrues only when the client discovers or should discover the facts essential to the malpractice claim, including actual and appreciable harm. (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 186, 194 [98 Cal.Rptr. 837, 491 P.2d 421] (*Neel*); *Budd v. Nixen* (1971) 6 Cal.3d 195, 200–201 [98 Cal.Rptr. 849, 491 P.2d 433] (*Budd*); see *Laird*, at p. 611.) As we then recognized, however, this delayed discovery rule placed "an increased burden upon the legal profession," having as one undesirable consequence the subjecting of attorneys to open-ended liability: "An attorney's error may not work damage or achieve discovery for many years after the act, and the extension of liability into the future poses a disturbing prospect." (*Neel*, at p. 192.) We suggested some absolute outside limit might be desirable. (*Id.* at pp. 192–193.)

The problems we foresaw in *Neel* and *Budd* began to manifest themselves in the form of rapidly rising malpractice insurance premiums. (Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 State Bar J. 22 (hereafter *Statute of Limitations*) [reporting increases of 100 to almost 400 percent in a single year]; Mallen, *An Examination of a Statute of Limitations for Lawyers* (1978) 53 State Bar J. 166 ["Malpractice insurance has become so expensive and hard to purchase that last year California lawyers debated an abortive effort for a State Bar sponsored insurance program" as an alternative to private insurance].) The 1977 Mallen article included a proposed model attorney malpractice statute of limitations. (*Statute of Limitations*, at p. 24.) The article was circulated to legislators, and later in 1977, drawing heavily from Mallen's proposed language, the Legislature passed Assembly Bill No. 298 (1977–1978 Reg. Sess.), enacting a special statute of limitations for attorney malpractice. (See § 340.6.)

In particular, while the originally introduced version of Assembly Bill No. 298 (1977–1978 Reg. Sess.) limited grounds for tolling to fraud or intentional concealment, Mallen's article suggested an expanded set of tolling provisions. (See Assem. Bill No. 298 (1977–1978 Reg. Sess.) as introduced Jan. 25, 1977, p. 2; *Statute of Limitations, supra*, 52 State Bar J. at p. 24.) In May 1977, the bill was rewritten with Mallen's proposal as a template, borrowing verbatim the proposed "continuous representation" tolling provision. (See Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 9, 1977, p. 3; *Statute of Limitations*, at p. 24; *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165, 1171 [16 Cal.Rptr.2d 837].) This provision was intended to codify the continuous representation rule as it had then developed in other states. (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 3; *Statute of Limitations*, at p. 24; *Hensley*, at p. 1171.) Notably, however, in the few years since the rule's 1968 development by a pair of New York courts (*Siegel v. Kranis* (N.Y.App.Div. 1968) 29 A.D.2d 477 [288 N.Y.S.2d 831, 834–835]; *Wilson v. Econom* (N.Y.Sup.Ct. 1968) 56 Misc.2d 272 [288 N.Y.S.2d 381, 383–384]; see Mallen & Smith, Legal Malpractice (2007 ed.) § 22.13, pp. 397–398), the rule had been extended only to tolling of an action based on continued representation by the *defendant* attorney or firm.[4] We are thus reluctant to conclude the Legislature intended a broader application when it codified the continuous representation rule.

---

[4] See *Basic Food Industries v. Travis* (1975) 60 Mich.App. 492 [231 N.W.2d 466, 468]; Mich. Comp. Laws Ann. section 600.5838; *Grago v. Robertson* (N.Y.App.Div. 1975) 49 A.D.2d 645 [370 N.Y.S.2d 255, 259]; *Siegel v. Kranis, supra*, 288 N.Y.S.2d at page 835; *Wilson v. Econom, supra*, 288 N.Y.S.2d at page 384; *Keaton Co. v. Kolby* (1971) 27 Ohio St. 2d 234 [271 N.E.2d 772, 774]; *Statute of Limitations, supra*, 52 State Bar J. at page 24, footnote 19 (identifying these authorities as reflective of the rule's application); see also Mallen & Smith, Legal Malpractice, *supra*, section 22.13, page 401 ("The predicate of the rule requires representation by the *defendant* lawyer" (italics added)).

We note as well that the interpretation most naturally suggested by the statute's text dovetails with the Legislature's ostensible purposes in adopting section 340.6. Assembly Bill No. 298 (1977–1978 Reg. Sess.) reflected a balancing of the interests of clients, who should not be prevented from obtaining relief when they could not have become aware of professional negligence, and attorneys, who in order to obtain malpractice coverage needed some definite outside limitations period. To protect clients, the Legislature codified the *Neel/Budd* delayed discovery rule (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 2; see *Laird v. Blacker*, *supra*, 2 Cal.4th at p. 611), albeit with a one-year limit from the time of actual or imputed discovery. To protect attorneys, it adopted a firm four-year outside limit on liability, thus making it more feasible to obtain affordable professional liability insurance. As the legislative history indicates, "[t]he purpose of the bill [was] to reduce the costs of legal malpractice insurance." (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 1; see also Sen. Democratic Caucus, analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended Aug. 17, 1977, p. 1 [the bill was intended to "reduce[] the cost of legal malpractice insurance, and limit[] the open-endedness of current law"].)

The statute includes four tolling provisions. (§ 340.6, subd. (a)(1)–(4).) These provisions necessarily diminish somewhat the certainty about the scope of potential liability that may still be outstanding, but the Legislature determined that in each specified circumstance, countervailing policies justified extension of the liability period. We previously have explained the legislative purposes underlying subdivision (a)(2)'s continuous representation exception: it "was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " (*Laird v. Blacker*, *supra*, 2 Cal.4th at p. 618, quoting Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 3.)

These purposes are minimally implicated in a case such as this where an individual defendant attorney has left a defendant law firm. When a lawyer leaves a firm and takes a client with him, the firm's representation of the client ceases. There is no risk the firm will attempt to run out the clock on the statute of limitations by offering reassurances and blandishments about the state of the case. Conversely, the firm loses all ability to mitigate any

damage to the client. (See *Crouse, supra,* 67 Cal.App.4th at p. 1539.) Nor is there any ongoing firm-client relationship to disrupt.[5]

As the purposes underlying section 340.6, subdivision (a)(2)'s limited tolling provision are not directly implicated, we need not contemplate a strained textual interpretation that might somehow extend to this case. To do so with this statute would in any event be particularly unwise: "[S]ection 340.6 reflects the balance the Legislature struck between a plaintiff's interest in pursuing a meritorious claim and the public policy interests in prompt assertion of known claims. The courts may not shift that balance by devising expedients that extend or toll the limitations period. The Legislature expressly disallowed tolling under any circumstances not stated in the statute." (*Jordache, supra,* 18 Cal.4th at p. 756; see also *Laird v. Blacker, supra,* 2 Cal.4th at p. 618 [statute defines limited and exclusive bases for tolling]; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 224 [31 Cal.Rptr.2d 525].)

In contrast, the Court of Appeal's contratextual reading, while not materially advancing the policies behind the continuous representation tolling exception, would significantly undermine the Legislature's overall purposes in adopting section 340.6. Contrary to the Legislature's express intent to curtail open-ended liability, the Court of Appeal rule would revive indeterminate liability for firms every time an attorney leaves and takes a client with him or her. In each such instance, exposure would extend indefinitely based on forces outside the firm's control. In an era of ever increasing attorney mobility, the consequence of the Court of Appeal's interpretation would be a significant increase in uncertainty over exposure, with inevitable consequences for the cost and availability of professional liability insurance.

It is not for us as judges to determine independently what wise policy in this area should be. However, we will not lightly assume the Legislature intended such a broad, rule-swallowing exception when it adopted a limitations period intended to curtail widespread open-ended liability and reduce insurance costs, absent a strong textual basis for doing so. Here, there is no such basis.

The Court of Appeal in *Beane, supra,* 21 Cal.App.4th 89, reached a contrary conclusion by focusing solely on equity, never considering whether the language of section 340.6 might indicate a particular result. In *Beane,* an attorney at a small firm, Vodonick, allegedly failed to protect his octogenarian client's interests in rescinding a large promissory note obtained through

---

[5] We discuss below the impact of our interpretation on the relationship between the client and the current attorney. (See, *post,* at pp. 513–514.)

undue influence. After the firm dissolved, Vodonick provided continuing representation without materially improved results; eventually the (now deceased) client's estate sought relief against both Vodonick and his former fellow shareholders.[6] The *Beane* court rejected the former fellow shareholders' statute of limitations defense, concluding that continued representation by one former member of the firm tolled the statute as to all former members under an " 'all for one and one for all' " rule. (*Beane*, at p. 99.)

*Beane* identified two equitable considerations in support of its rule. First, suit against the former fellow shareholders might disrupt the client's ongoing relationship with the departing attorney who still represented her if the former fellow shareholders brought indemnity actions against him. Second, the fiduciary relationship between attorney and client would "lull the client into inaction" even after the client learned of an adverse result (*Beane, supra,* 21 Cal.App.4th at p. 99) as indeed in the court's eyes did Vodonick's soothing reassurances to his elderly client (*ibid.*). In agreeing with *Beane,* the Court of Appeal here noted as well that indirect disruption of the ongoing attorney-client relationship would impede the current attorney's ability to cure the error or mitigate its consequences, and failing to toll as to the firm would inequitably place the burden of malpractice only on the current attorney.

*Beane,* the Court of Appeal, and Beal Bank each focus on the elimination of even the potential for disruption of the current attorney-client relationship as the paramount policy concern. But potential disruption from third party indemnity suits is surely less of a concern than that which triggered enactment of the continuous representation tolling provision—i.e., forcing the client to prematurely sue the attorney. Moreover, any disruption may be reduced through voluntary tolling agreements, as have been entered into in this case and in numerous others,[7] or though stays of litigation. As we have previously emphasized, " 'trial courts have inherent authority to stay malpractice suits, holding them in abeyance pending resolution of underlying litigation.' " (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1211 [108 Cal.Rptr.2d 471, 25 P.3d 670], quoting *Adams v. Paul* (1995) 11 Cal.4th 583, 593 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (lead opn. of Arabian, J.).) The liberal use of tolling agreements and stays in malpractice cases may reduce the impact on the underlying litigation, ensure that plaintiffs do not have their claims prematurely barred, protect defendants' and defendants' insurers' interests in "receiving timely notice and avoiding stale claims" (*Coscia,* at p. 1211), and allow current counsel, to the extent practicable, to continue to

---

[6] The firm had been organized as a professional corporation.

[7] See, e.g., *Jordache, supra,* 18 Cal.4th at page 746; *Crouse, supra,* 67 Cal.App.4th at page 1522; Mallen & Smith, Legal Malpractice, *supra,* section 22:12, pages 396–397 ("Experience has shown that most lawyers are willing to toll a statute of limitations upon the hope that the existence or extent of an injury will be reduced or eliminated by subsequent judicial action").

work to ameliorate the consequences of any past mistakes. Current counsel will have considerable incentive to do so, as any mitigation will reduce their own potential future liability.

As for the further risk *Beane* noted, that current counsel will continue to lull unwary clients and prevent them from suing (*Beane, supra,* 21 Cal.App.4th at p. 99), attorneys have a fiduciary obligation to disclose material facts to their clients, an obligation that includes disclosure of acts of malpractice (*Neel, supra,* 6 Cal.3d at pp. 188–189). Former counsel are powerless to control whether current counsel breach that obligation. To the extent current counsel do breach that obligation, it will do nothing to reduce their own liability, as their own ongoing representation will continue to toll the limitations period on claims against them; it will instead simply increase the risk that when the client does sue, current counsel and current counsel alone will be forced to bear responsibility for any errors. The interpretation of section 340.6, subdivision (a)(2) we adopt thus creates an additional incentive for counsel to fulfill their fiduciary duties.[8]

We do not presume that our interpretation offers a perfect solution or that stays and tolling agreements will eliminate entirely disruption of the client's relationship with its chosen counsel. Given the conflicting interests at stake, there are no perfect solutions. The interpretation we adopt is the one most faithful to section 340.6's language and to the full range of interests the Legislature balanced in passing that statute. The Court of Appeal, and *Beane* before it, erred in disregarding section 340.6's language and in engaging in policy analysis unmoored from the statutory text. We disapprove *Beane v. Paulsen, supra,* 21 Cal.App.4th 89, to the extent it is inconsistent with this opinion.

---

[8] The statutory text contains an additional clue that preventing even indirect disruption was not the overriding consideration for the Legislature. The continuous relationship tolling provision applies only so long as representation continues "regarding the specific subject matter in which the alleged wrongful act or omission occurred." (§ 340.6, subd. (a)(2).) Once representation on that matter ends, a client must bring timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship in all other such matters. Had the Legislature intended preservation of the attorney-client relationship as a dispositive trump card, it would not have so limited the scope of the tolling exception.

DISPOSITION

The Court of Appeal's judgment is reversed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.