Filed 09/28/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Respondent;<br><br>NA HOKU, INC. et al.,<br><br>     Real Parties in Interest. | A167105<br>(San Francisco<br>City & County Super. Ct.<br>Case No. CGC-21-596749)<br><br>**ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT** |

**THE COURT\*:**

It is ordered that the opinion filed herein on September 8, 2023, be modified as follows:

At page 16, in the second paragraph in the string citation, "*Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 706 ["the mere giving of a check payable to the agent does not constitute payment"];" is deleted.

There is no change in the judgment.

Dated: _____            _____

---

\* Tucher, P.J., Fujisaki, J., and Petrou, J. participated in the decision.

Filed 9/8/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE DOE,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Respondent;<br><br>NA HOKU, INC., et al.,<br><br>     Real Parties in Interest. | A167105<br><br>(San Francisco<br>City & County Super. Ct.<br>Case No. CGC-21-596749) |

Petitioner Jane Doe sued real parties in interest – her former employer Na Hoku, Inc. and former manager Ysmith Montoya (collectively real parties) – asserting multiple claims arising from Montoya's alleged sexual harassment and assault of Doe. Real parties successfully compelled the case to arbitration.

September 1, 2022[1] was the "due date" for real parties to pay certain arbitration fees and costs to the arbitrator. Under Code of Civil Procedure section 1281.98, subdivision (a)(1) (section 1281.98(a)(1))[2], these fees and costs had to be "paid within 30 days after the due date" – or by October 3 – to

---

[1]    All dates hereafter refer to the year 2022 unless otherwise stated.

[2]    All statutory references are to the Code of Civil Procedure unless otherwise stated.

1

avoid breaching the arbitration agreement. Instead, the arbitrator received the payment on October 5, two days after the statutory 30-day grace period expired. This delay was because real parties opted to mail a check on Friday, September 30 for the full amount due on Monday, October 3 even though payment could be submitted by credit card, electronic check (also referred to as "ECheck"), or wire transfer.

Petitioner moved to vacate the order compelling arbitration on the basis that real parties failed to pay their arbitration fees and costs within 30 days of the due date as required by section 1281.98(a)(1). After the trial court denied the motion, thus precluding petitioner from withdrawing from the arbitration and pursuing her claims in court, she filed a petition for writ of mandate in this court.

In this writ proceeding, we strictly enforce the 30-day grace period in section 1281.98(a)(1) and conclude fees and costs owed for a pending proceeding must be *received* by the arbitrator within 30 days after the due date. We do not find that the proverbial check in the mail constitutes payment and agree with petitioner that real parties' payment, received more than 30 days after the due date established by the arbitrator, was untimely. We therefore grant the writ petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2021, petitioner filed a complaint against real parties asserting multiple claims arising from several incidents in which Montoya allegedly sexually harassed and assaulted her. Real parties successfully moved to compel arbitration, and the court ordered the case to binding arbitration.

On May 16, the American Arbitration Association (AAA) sent the parties a letter confirming the rules for arbitration and seeking payment of

2

the initial administrative fees.  AAA explained: "This letter shall serve as the invoice pursuant to California Code of Civil Procedure Section 1281.97.  Payment is due upon receipt of this letter.  As this arbitration is subject to California Code of Civil Procedure 1281.97, payment must be received by June 15th, 2022 or the AAA will close the parties' case.  Pursuant to California Code of Civil Procedure 1281.97, the AAA cannot grant any extensions to this payment deadline.  [¶]  Please note payment should be submitted by credit card or electronic check."  (Underscoring omitted.)  On May 24, real parties timely paid their initial administrative fees by credit card.

On September 1, AAA sent the parties another letter and invoice seeking a deposit to cover the arbitrator's anticipated compensation and expenses for the arbitration.  The letter stated in relevant part: "Payment in the amount of **$22,500 is due upon receipt of this notice** for preliminary matters. . . .  The case management fee [$750] is also due and reflected on your invoice.  As this arbitration is subject to *California Code of Civil Procedure 1281.98*, **payment must be received 30 days from the date of this letter** to avoid closure of the parties' case.  Pursuant to *California Code of Civil Procedure 1281.98*, the AAA cannot grant any extensions to this payment deadline unless agreed upon by all parties."  (Emphasis in original.)  The total amount owed was $23,250.  The letter provided instructions for online payment and the invoice included a separate page of "Payment Options" which listed three ways to pay: (1) credit card or eCheck; (2) wire transfer; or (3) check to an address in Dallas, Texas.  The invoice also noted: "Unless instructed otherwise, invoice balance due upon receipt."

On September 28, AAA e-mailed real parties the following message: "This is a courtesy reminder neutral compensation deposits in the amount of

3

$23,250 in the above-referenced matter were due as of September 1, 2022. An invoice is attached for your reference. As this arbitration is subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received within 30 days of the due date. The AAA cannot grant any extension to this deadline. The last day to remit payment is October 3rd." The same invoice and "Payment Options" enclosure listing credit card or eCheck, wire transfer, or check were included with the email.

On Friday, September 30, Na Hoku mailed a check for $23,250 to the Texas address provided. On Monday, October 3, counsel for real parties informed AAA that payment had been mailed. On October 5, AAA received real parties' payment and applied it to the case.

Petitioner moved to vacate the trial court's order compelling arbitration on the grounds that real parties had failed to pay their arbitration fees and costs within 30 days of the due date as required by statute. She argued their late payment was a material breach of the arbitration agreement and waived their right to compel arbitration.

Following further briefing and a hearing, the trial court denied the motion. Observing that "the provider's demand was for payment remitted by October 3," the court ruled that real parties "indisputably complied" with the date "having remitted (i.e., sent) the sum in by that date." The court recognized the possible "ambiguity as to whether a 'due' date meant the day the sum had to be remitted or received by the provider" but concluded AAA's second communication "clarified this: The date was for the remitting of the sum." In the trial court's view, because real parties' remittance of payment by October 3 "satisfied the due date imposed by the provider, and that being so, § 1281.98 was complied with as well." The court added, "§ 1281.98

4

requires the sum to be 'paid' – not necessarily 'received' – within the 30 day period.  This was done here."

Petitioner filed the instant petition for writ of mandate or prohibition, or other appropriate relief, requesting we vacate the trial court order denying her motion to vacate.  Upon our request, real parties filed an informal response to the petition.  Petitioner filed an informal reply.  We thereafter issued an alternative writ of mandate directing respondent superior court to set aside and vacate its order denying petitioner's motion to vacate the order compelling arbitration, and to enter a new and different order granting the motion and addressing the request for sanctions in petitioner's motion.

The trial court issued an order declining to comply with the alternative writ.  Real parties filed a return to the petition, to which petitioner filed a reply (traverse).  We now turn to the merits of the petition.

**DISCUSSION**

Petitioner argues the trial court misinterpreted section 1281.98 in allowing real parties more than 30 days to pay arbitration fees and costs.  We agree.

## I.    Applicable Law

Ordinarily, a trial court's determination that a party waived the right to arbitrate is subject to substantial evidence review.  (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946.)  However, where the parties do not dispute the factual support for the trial court's ruling, but instead dispute the proper interpretation of section 1281.98, the appellate court's review is de novo. (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 749–750 (*De Leon*); *Carmel Development Company, Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 503 ["We review a trial court's interpretation and application of statutes de novo."].)

"In 1961, the California Legislature enacted the California Arbitration Act (CAA) (§ 1280 et seq.) as a way to protect the right of private parties to resolve their disputes through the 'efficient, streamlined procedures' of arbitration." (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633 (*Gallo*).) In 2019, the California Legislature added sections 1281.97 and 1281.98 to the CAA. (*Gallo*, *supra*, at p. 633.) Section 1281.97 sets forth the procedures by which a company that has included a predispute arbitration provision in a contract with an employee must pay its share of initiation fees or costs for the arbitration. (§§ 1281.97, subd. (a); 1280, subd. (e).) Section 1281.98, subdivision (a) (section 1281.98(a)) sets forth the procedures for a company's payment of fees and costs while an arbitration proceeding is pending. Section 1281.98(a)(1) provides in relevant part: "In an employment or consumer arbitration that requires . . . that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach." (§ 1281.98, subd. (a)(1).)

Section 1281.98, subdivision (a)(2) (section 1281.98(a)(2)) states the arbitration provider "shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the

6

arbitration provider shall issue all invoices to the parties as due upon receipt. Any extension of time for the due date shall be agreed upon by all parties." (§ 1281.98, subd. (a)(2).)

A company's breach of its payment obligation in section 1281.98(a) confers upon the employee the choice of (1) withdrawing the claim from arbitration and proceeding in a court of appropriate jurisdiction; (2) compelling arbitration but requiring the company to pay reasonable attorney's fees and costs related to the arbitration; (3) petitioning the court for an ordering compelling the company to pay all arbitration fees it is obligated to pay under the arbitration agreement or rules provided by arbitrator; or (4) paying the company's fees and proceeding with the arbitration.  (§ 1281.98, subds. (b)(1)–(4).)

A company that materially breaches an arbitration agreement under section 1281.98(a) is also required to pay the "reasonable expenses, including attorney's fees and costs, incurred by the employee . . . as a result of the material breach" (§1281.99, subd. (a)), and may also suffer an evidentiary, terminating, or contempt sanction unless it "acted with substantial justification" or "other circumstances make the imposition of the sanction unjust" (§ 1281.99, subd. (b)).[3]

## II.    Analysis

September 1 was the "due date" for payment of the arbitration fees and costs at issue in this appeal.  Section 1281.98(a)(2) allows the parties to agree

---

[3]    The procedures set forth in section 1281.98 for the payment of costs for a pending arbitration largely parallel those set forth in section 1281.97 for the payment of costs associated with initiating an arbitration.  (See §§ 1281.97, subds. (a)–(d); *Gallo*, *supra*, 81 Cal.App.5th at p. 633, fn. 4 [noting its analysis of section 1281.97 "applies with equal force to the parallel provisions of section 1281.98"].)

7

to a due date for payment of any required fees or costs in their arbitration agreement and allows the parties to agree to an extension of the due date; neither party identifies any such agreement. Therefore, pursuant to section 1281.98(a)(2), any required fees or costs were "due upon receipt" of the invoice issued to the parties. (§ 1281.98, subd. (a)(2).) As September 1 was the day the relevant invoice was e-mailed to the parties, that date – September 1 – was the "due date" for payment.

Under section 1281.98(a)(1), real parties had to pay necessary fees and costs to continue the arbitration "within 30 days after the due date" to avoid breach. (§ 1281.98, subd. (a)(1).) Since September 1 was the due date, the statutory 30-day grace period expired no later than October 3.[4] Indeed, AAA's September 1 letter emphasized that "payment must be received within 30 days from the date of this letter" and its September 28 courtesy reminder email stated October 3 was the last day to remit payment. Neither party ever objected to these deadlines.

There is no dispute that real parties mailed a check to AAA for $23,250 on September 30 and that AAA received and applied the payment on October 5. The issue before us is whether real parties' payment was "paid within 30 days after the due date" and thus was timely within the meaning of section 1281.98. According to petitioner, section 1281.98 "must be interpreted to require **receipt** of payment within the 30-day deadline," and since real parties' payment was not received until October 5 – two days after the grace period expired – real parties breached the arbitration agreement and waived their right to arbitrate. Real parties, on the other hand, counter that

---

[4]    Thirty days after the September 1 due date was October 1, which fell on a Saturday. While the relevant provisions of the CAA do not discuss extensions when a performance deadline falls on a weekend or holiday, no party rejects Monday, October 3 as the extended deadline for payment.

8

remitting payment by October 3 made for a timely payment, and thus, the check it mailed on September 30 was on time regardless of its actual receipt date (October 5).

## A. Statutory Construction

Since we are called on to interpret what "paid within 30 days after the due date" in section 1281.98 means, we do so according to well-established principles of statutory construction. " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' [Citation.] '[W]e must first look to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs.' [Citation.] [¶] 'If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved" ' and the statute's legislative history." (*De Leon*, *supra*, 85 Cal.App.5th at p. 750.)

### 1. Plain Meaning

Here, the statutory language is not clear. While some terms in the statutory scheme are defined (see § 1280), there is no definition for the term "paid" in the clause "if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date." (§ 1281.98, subd. (a)(1).) Absent a statutory definition, we may turn to dictionaries to look for a word's usual, ordinary meaning. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122.) In the case before us, that inquiry does not lead us to a definitive conclusion. Webster provides a number of definitions for "pay" (including "to make due return to for services rendered

9

or property delivered," "to give in return for goods or service," and "to make a disposal or transfer of (money)") and "paid" as "marked by the receipt of pay," or "being or having been paid or paid for." (Merriam-Webster Dict. Online, (2023) <https://www.merriam-webster.com/dictionary/pay>, <https://www.merriam-webster.com/dictionary/paid>, [as of September 8, 2023].) Black's Law Dictionary has no separate entry for "paid" but offers multiple definitions of "pay": "1. To give money for a good or service that one buys . . . . 2. To transfer money that one owes to a person, company, etc. . . . 3. To give (someone) money for the job that he or she does . . ." (Black's Law Dict. (11th ed. 2019).)

Hence, and while we acknowledge that most service providers would not consider themselves "paid" until they received payment, the term "paid" is reasonably subject to more than one interpretation. We therefore turn to extrinsic aids including the statute's legislative history to reach an interpretation that best comports with the Legislature's purpose.

### 2. Legislative History

In 2019, when section 1281.97 and 1281.98 were added to the CAA with the passage of Senate Bill No. 707 (SB 707), the Legislature recognized that a " 'company's failure to pay the fees of an arbitration provider' " as required by an arbitration agreement or applicable law " 'hinder[ed] the efficient resolution of disputes and contravene[d] public policy.' " (*De Leon*, 85 Cal.App.5th at p. 750.) SB 707 aimed to solve a very specific problem – namely, the "procedural limbo and delay workers and consumers face when they submit to arbitration, pursuant to a mandatory arbitration agreement, but the employer fails or refuses to pay their share of the arbitration fees." (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 2; see also *Gallo*, *supra,* 81

10

Cal.App.5th at pp. 633–634.)  The Legislature noted that when an employer "fails to properly pay for the arbitration, existing law does not provide the employee and customer with a clear means to redress their harms.  Although courts have held that such failures to pay for arbitration may be grounds to invalidate an arbitration agreement, state law does not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner."  (Assem. Comm. on Judiciary, analysis of Sen. Bill 707 (2019-2020 Reg. Sess.), as amended May 20, 2019, p. 6.)

According to the bill's author: "SB 707 [ensures that] individuals who have been forced to submit to mandatory arbitration to resolve an employment or consumer dispute would be provided with procedural options and remedies . . . when a company stalls or obstructs the arbitration proceeding by refusing to pay the required fees."  (Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended Apr. 30, 2019, p. 6.)  Foremost among the remedies provided by SB 707 is that "if the fees or costs to initiate or continue an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration pursuant to existing law."  (Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 1.)  Analysis of the bill further provided: "In light of the extreme hardship that needlessly delaying arbitration may cause to plaintiffs, the material breach and sanction provisions of this bill would seem to be a strict yet reasonable method to ensure the timely adjudication of employee and consumer claims that are subject to arbitration."  (Assem. Com.

11

on Judiciary, Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.), as amended May 20, 2019, p. 9.)

While we identified nothing in the legislative history that addresses whether payment of arbitration costs "within 30 days after the due date" means received or remitted within the 30-day grace period, the legislative purposes in enacting sections 1281.97 and 1281.98 help inform our construction. One of the Legislature's main objectives was to deter employers from strategically withholding payment of arbitration fees so that they could no longer stymie the ability of employees to assert their legal rights. To do this, the Legislature established strict breach provisions for nonpayment that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment. *Any* untimely payment constituted a material breach regardless of the circumstances or status of the arbitration proceedings. The Legislature further sought to provide employees clear guidance in the event of untimely payment and to have such breaches strictly enforced.

Courts that have considered the legislative history of sections 1281.97 or 1281.98 share these views. The court in *De Leon*, *supra*, 85 Cal.App.5th 740, observed that section 1281.98's "30-day deadline establishes a clear-cut rule for determining if a [company] is in material breach of an arbitration agreement." (*De Leon,* at p. 755.) The statute's "legislative history indicates the California Legislature sought a clear and unambiguous rule for courts to apply in determining whether late payment of arbitration fees by a drafting party constituted a material breach of an arbitration agreement." (*Id.* at p. 756.) The court in *Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073 (*Cvejic*), observed that "the Legislature sought a clear rule for determining whether the late payment of a fee by a drafting party constituted a material

12

breach" and further observed that the legislative history and caselaw directed strict enforcement of section 1281.98. (*Cvejic, supra*, at p. 1078.) In construing section 1281.97, the court in *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761 (*Espinoza*), remarked: "[T]he Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline." (*Id.* at p. 776.) In short, the courts that have examined the legislative history agree the Legislature sought to establish a clear and unambiguous rule for determining a breach based on nonpayment as well as strict enforcement of the statute.

Here, the construction offered by petitioner, i.e., payment made and received within 30 days of the due date, best effectuates this legislative purpose. (See *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 508 [when statutory language is ambiguous, the court adopts the interpretation that best effectuates the legislative intent].) This construction provides a clear, bright-line rule for determining compliance with the 30-day statutory grace period as the arbitrator can readily and definitively determine whether funds have been received to satisfy any outstanding fees or costs owed for a pending arbitration. If such fees are not received by the conclusion of the statutory grace period, an employee may immediately elect to pursue options for relief.

The alternative construction endorsed by real parties, i.e., sending funds within 30 days of the due date satisfies the deadline, risks delay and uncertainty as to the timeliness of payment given possible delays and the need to allow for an appropriate period for delivery. It therefore precisely invites the types of issues the Legislature sought to avoid with a bright-line rule. Because this construction is more prone to leave an employee with

13

uncertainty and hinder the efficient resolution of a dispute, both of which run counter to the legislative intent, we decline to adopt it.

### 3. Case Law Supporting Strict Construction

Our construction is further supported by recent case law in which courts have strictly enforced the statutory deadlines of 1281.97 and 1281.98. These cases have uniformly rejected invitations to consider discretionary factors, e.g., the intent of the employer or prejudice to the employee, in determining compliance with the statutes or materiality of the breach.

In *Espinoza, supra,* 83 Cal.App.5th 761, the appellate court reversed the trial court's conclusion that a defendant's late payment of an arbitration provider's invoice was "in 'substantial[ ] compliance' with the arbitration agreement and 'not in material breach,' because the delayed payment was due to ' "clerical error," ' and the delay did not prejudice plaintiff." (*Id.* at p. 775.) The court found the "language of section 1281.97 is unambiguous. . . . [T]he triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the [employee]. The plain language therefore indicates the Legislature intended the statute to be strictly applied whenever a [company] failed to pay by the statutory deadline." (*Espinoza,* at p. 776.)

In *De Leon, supra,* 85 Cal.App.5th 740, the parties agreed the employer did not pay the outstanding arbitration fees within 30 days after the due date set by the arbitrator. (*Id.* at p. 748.) Relying on the plain language of section 1281.98, the trial court concluded that " 'a defendant is automatically in material breach of the arbitration agreement once the defendant fails to pay the arbitration fees or costs within 30 days of the due date." (*De Leon,* at pp. 748–749.) It declined the employer's request to consider additional factors

14

beyond the late payment, such as whether it caused delay in the proceedings or otherwise prejudiced the plaintiff, to determine whether the employer materially breached the agreement. (*Ibid.*) The appellate court affirmed the trial court order vacating the earlier order compelling arbitration. *(Id.* at p. 758.) In doing so, it rejected the employer's argument that the trial court's construction was a " 'hyper-technical reading' of section 1281.98 that failed to account for whether a late payment caused delay or prejudiced the employee." (*De Leon*, at p. 752.) Finding the language in section 1281.98 "clear and unambiguous," the court explained it "establishes a simple bright-line rule that a [company's] failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement." (*De Leon*, at pp. 753, 755 [the statute's "30-day deadline establishes a clear-cut rule for determining if a drafting party is in material breach of an arbitration agreement"].)

In *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054 (*Williams*), the trial court granted the plaintiffs' motion to withdraw from arbitration because the hospital, which was being sued for elder abuse among other claims, had not timely paid its share of arbitration fees under section 1281.98. (*Williams*, at p. 1063.) In affirming the order allowing the plaintiffs to withdraw, the court acknowledged that the hospital's "belated payment was unintentional" and that "the ensuing delay amounted to a few days" but concluded that "nothing in section 1281.98 as drafted depends on the intent or good faith of a particular [company] in a specific case. [Citations.] To further its stated purpose, the Legislature in enacting sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment." (*Williams*, at pp. 1074–1075.)

15

While none of these cases addresses whether payment of arbitration costs "within 30 days after the due date" means received or remitted, they clearly reflect that section 1281.98 has been construed to provide a straightforward, clear, and unambiguous rule for when the payment obligation is breached and emphasize the legislative intent for the statute's strict enforcement. (See also *Gallo*, *supra*, 81 Cal.App.5th at p. 644 [section 1281.97 "statutorily defines a material breach as a matter of law to be failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving materiality as an issue of fact for the trier of fact to determine"].)

Our construction and rejection of real parties' interpretation is also in line with the general principle that the depositing a check in the mail does not constitute payment. (See *Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 706 ["the mere giving of a check payable to the agent does not constitute payment"]; *Cornwell v. Bank of America* (1990) 224 Cal.App.3d 995, 999 [" 'Payment is not effectuated by sending the amount due to the creditor by mail or other public carrier until the remittance gets into the hands of the creditor, unless he expressly or by implication directs or consents that payment be so made, or such mode of payment is according to the usual course of dealings between the parties, from which the creditor's assent can be inferred.' "]; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439–440 [" 'The deposit of a payment check in the mail does *not* constitute payment. The borrower assumes the risk that the deposited payment will be delivered and received by the beneficiary. When a creditor *directs* a debtor to mail payment, it is deemed that the payment is made when it is deposited in the

16

mail. Otherwise, the payment is *not effective* until received by the creditor.' "].)[5]

## 4. Real Parties' Counterarguments

Real parties contend the trial court correctly determined AAA's instructions governed the payment of fees and costs they owed because the Legislature gave the arbitrator the authority to state the date payment is due. Therefore, AAA's instruction that October 3 was the last day to remit payment established both the deadline and that sending payment in the form of a check by that deadline would constitute timely payment. Real parties further argue the plain meaning of "remit" is to send or transmit and does not involve delivery or receipt. None of these arguments are persuasive or compel a different result.

First, real parties overstate the arbitration provider's ability to set payment deadlines or to dictate the terms of payment. As set forth in section 1281.98(a)(2), "[t]he arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due

---

[5] Civil Code section 1476, which creates an exception when the creditor directs payment in a particular manner, provides: "If a creditor, or any one of two or more joint creditors, at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance." (Civ. Code, § 1476.) Real parties do not argue this provision applies, so we do not consider it.

17

upon receipt. Any extension of time for the due date shall be agreed upon by all parties." (§ 1281.98, subd. (a)(2).) The statute directs arbitrators to set invoices as "due upon receipt" barring agreement by the parties, provides for an automatic 30-day statutory grace period, and only contemplates extensions of the due date by agreement of the parties, not by the arbitration provider. (§ 1281.98, subds. (a)(1)–(2).) Once the due date has been set, there is no provision in section 1281.98 which contemplates any extension of the statutory 30-day grace period. Therefore, once AAA set the due date as September 1 – the day it emailed the relevant invoice to the parties – and triggered the 30-day grace period, it had no authority to alter the due date absent the parties' agreement. When AAA emailed its September 28 courtesy reminder, it has no authority to adjust the statutory 30-day grace period either.

Second, even if the final sentence in AAA's courtesy reminder noting that "the last day to remit payment [was] October 3rd" created some unfortunate confusion as to whether payment had to be received or could simply be sent by that date, there is no basis for this instruction to have controlled how payment must be made or to have superseded AAA's earlier instructions which clearly notified real parties payment needed to be "received." Real parties identify no provision in the statute which allows the arbitration provider to set terms, including how payment is made, which alter payment deadlines.[6]

---

[6] In any event, real parties' heavy reliance on the "remit" instruction also overlooks the explicit text in AAA's letter of September 1 emphasizing in bold that "**payment must be *received* 30 days from the date of this letter**" (italics added), and the earlier sentence in the courtesy reminder email repeating that "payment must be received within 30 days of the due date." Across its two communications about the invoice, AAA did not consistently

18

Third, we do not quarrel with real parties' plain meaning analysis of the term "remit" and the authorities it relies on construing the term to mean send.  But "remit" is not part of the text of section 1281.98 and does not control our construction of what the Legislature meant by "paid within 30 days of the due date" in that statute.

Finally, we understand the payments in *Espinoza*, *De Leon*, and *Williams* were indisputably late, in contrast to our situation in which real parties contend their mailed check was timely.  Even so, these cases underscore the need to strictly construe and enforce the terms of section 1281.98 without exception.

## DISPOSITION

Let a peremptory writ of mandate issue commanding respondent in *Doe v. Na Hoku, Inc., et al.* (Super. Ct. S.F. City and County, No. CGC-21-596749), to set aside and vacate its order of December 5, 2022 denying petitioner's motion to vacate order compelling arbitration, and to enter a new and different order granting the motion and addressing the request for sanctions in petitioner's motion.  All parties shall bear their own costs associated with this writ proceeding.  (Cal. Rules Court, rule 8.493(a).)

---

use the term "remit" when discussing compliance with the payment deadline. Further, they cite no authority to support their contention that the remit-by-October 3 language superseded these instructions simply because it appeared last.

                                    _____

                                    Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.

A167105/*Doe v. Superior Court of the City and County of San Francisco*

Trial Court:       San Francisco County Superior Court

Trial Judge:       Hon. Curtis Karnow

Counsel:           Alexander Morrison + Fehr, Tracy L. Fehr; Malk Law Firm, Michael Malk for Petitioner.

                   Lewis Brisbois Bisgaard & Smith, Melissa Daugherty, Lann McIntyre, Caroline Chan, and Irene Gharapet for Real Parties in Interest.